Incorrect filing fee Submitted

48

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

**BENJAMIN P. FOREMAN,**

Plaintiff,

**COMPLAINT AND JURY**

**DEMAND**

**v.**

Case: 2:22-cv-10401
Judge: Michelson, Laurie J.
MJ: Altman, Kimberly G.
Filed: 02-17-2022
CMP FOREMAN VS UNITED STATES OF AMERICA, ET AL (DP)

**UNITED STATES OF AMERICA, JONATHAN HEMINGWAY, UNKNOWN MEDICAL STAFF, NP WEAVER, AND OFFICER PATTON,**

Defendants.

_____/

Plaintiff, Benjamin P. Foreman (at times referred to as "Mr. Foreman"), proceeding Pro Se Plaintiff, respectfully alleges and tenders the following as his Complaint and Jury Demand against UNITED STATES OF AMERICA, JONATHAN HEMINGWAY, UNKNOWN MEDICAL STAFF, NP WEAVER, AND OFFICER PATTON (collectively

1 | P a g e

Referred to as "Defendants").

## PRELIMINARY STATEMENT

1. Plaintiff brings this suit pursuant to Bivens v. Six Unknown Named Agents of the Federal Narcotics, 403 U.S. 388 (1971) and its progeny, under the Fifth and Eighth Amendments to the U.S. Constitution, for the willful failure and withholding of proper medical care and treatment, failing to protect him from the risk and of an infectious (COVID-19) disease, and access to proper medical care and treatment, which caused him to suffer cruel and unusual treatment while he was a federal prisoner and in the custody of the Federal Bureau of Prisons ("BOP"). Plaintiff further brings this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671, et seq., for negligence and/ or professional malpractice in connection with the care and treatment provided to him by individual Defendants within the scope of their employment with the Federal Bureau of Prisons.

2. As a direct result of Defendants' wrongful acts and omissions, Plaintiff BENJAMIN P. FOREMAN suffered permanent and personal injuries for which he now seeks relief.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the subject matter of this Complaint under the U.S. Constitution and 28 U.S.C. 1331 and 1346 (b).

**4.** This Court has personal jurisdiction over the Defendants because the alleged incidents occurred within the confines of this Court.

**5.** Venue is proper within the United States District Court for the Eastern District of Michigan under 28 U.S.C. 1391 and 1402 (b) in that the events giving rise to the claim occurred within the boundaries of the Eastern District of Michigan.

## CONDITIONS PRECEDENT TO THE LAWSUIT

**6.** Pursuant to the FTCA, on or about February 16, 2021, Plaintiff timely served an Administrative Claim, providing the BOP with the necessary information to investigate Plaintiff's claims and their worth.

**7.** In a letter dated August 17, 2021, the BOP denied Plaintiff's claims in their entirety. The same letter was received by Plaintiff on August 21, 2021.

**8.** Plaintiff therefore exhausted administrative remedies with respect to his claims, and met all conditions precedent to this lawsuit.

**9.** This action is timely pursuant to 28 U.S.C. 2401 (b) in that it is begun within six months of the federal agency's letter denying the Administrative Claim.

## PARTIES

**10.** At all times herein mentioned, continuing to until August 10, 2020, Plaintiff remained a prisoner in the custody of the Federal Bureau of Prisons ("BOP"), incarcerated at Federal Correctional

**3 |** P a g e

Institution Milan located at 4004 Arkona Road, Milan, Michigan 48160, commonly known as the Federal Correctional Institution Milan-FCI-Milan.

11. Defendant UNITED STATES OF AMERICA is the appropriate Defendant for Plaintiff's claims under the Federal Tort Claims Act.

12. At all times herein mentioned, defendants NP WEAVER were the medical personnel employed by the BOP and were responsible for the day-to-day oversight of medical examinations, testing, treatment and general health of inmates confined at FCI-Milan.

13. With respect to Plaintiff's **Bivens** claims herein, defendant NP WEAVER is sued in her individual capacity.

14. At all times herein mentioned, defendant NP WEAVER was or represented herself to be a physician duly licensed as a Nurse Practitioner in the State of Michigan.

15. At all times hereinafter mentioned, defendant NP WEAVER was or represented to the public in general, and to the Plaintiff in particular, to be able, competent and qualified to skillfully diagnose, care for, and treat patients in general, and the Plaintiff in particular, in accordance with good and accepted Standards of medical care and practice.

16. At all times hereinafter mentioned, defendant NP WEAVER undertook to and did provide medical, diagnostic and technical

4 | P a g e

examinations, evaluations, consultations, care, treatments, procedure, services, or advise of, for and to Plaintiff.

17. With respect to Plaintiff's **Bivens** claims herein, defendant NP WEAVER is sued in his individual capacity.

18. At all times mentioned, defendant NP WEAVER, was or represented himself to be a physician duly licensed or authorized as a Nurse Practitioner in the State of Michigan.

19. At all times hereinafter mentioned, defendant NP WEAVER was or represented to the public in general, and to the Plaintiff in particular, to be able, competent and qualified to skillfully diagnose, care for, and treat patients in general, and the Plaintiff in particular, in accordance with good and accepted standards of medical care and practice.

20.  At all times hereinafter mentioned, defendant NP WEAVER undertook to and did provide medical, diagnostic and technical examinations, evaluations, consultations, care, treatments, procedures, services, or advise of, for and to Plaintiff.

21. With respect to Plaintiff's **Bivens** claims herein, defendant JONATHAN HEMINGWAY is sued in his individual capacity.

22. At all times mentioned, defendant JONATHAN HEMINGWAY was the Warden of FCI-Milan in Milan, Michigan rendering decision making for that Federal Facility.

5 | P a g e

**23.** At all times hereinafter mentioned, defendant JONATHAN HEMINGWAY was represented as the FCI-Milan Warden who renders some of the final decision making for FCI-Milan inmates.

**24.** At all times herein mentioned, defendant UNKNOWN MEDICAL STAFF in which called Plaintiff down to FCI-Milan Medical Department on April 6, 2020, gave him a temperature check and it was determined that Plaintiff did not have a temperature above 100 degrees, however, this UNKNOWN MEDICAL STAFF still ordered Plaintiff to be isolated in the ("SHU"), for a projected period of 14 days over Plaintiff's Objections. At roughly 12 noon or so on April 6, 2020, Plaintiff was detained in the ("SHU"), where he was handcuffed and his Protective Cloth Mask was taken from Plaintiff.

**25.** At all times herein mentioned, defendant UNKNOWN MEDICAL STAFF was or represented to the public in general, and to the Plaintiff in particular, to be able, competent and qualified to skillfully care for, and treat patients in general, and the Plaintiff in particular, in accordance with good and accepted standards of medical care and practice.

**26.** With respect to Plaintiff's **Bivens** claims herein, defendant UUNKNOWN MEDICAL STAFF is sued in his individual capacity.

**27.** At all times herein mentioned, defendant OFFICER PATTON was or represented to the public in general, and to the Plaintiff

**6 |** P a g e

in particular, to be a federal correction officer whose duties under 18 U.S.C. 4042 (a) (2)-(3), require the safekeeping, care and protection of Plaintiff, however, OFFICER PATTON ignored these duties by depriving Plaintiff of Medical Care and Treatment all night long after he cried and pleaded for medical care and treatment in which occurred on the night of April 9, 2020, through the early morning of April 10, 2020, thus, at 6 a.m. NP WEAVER found Plaintiff passed out in the E-Unit COVID-19 Isolation Cell.

**28.** With respect to Plaintiff's **Bivens** claims herein, defendant OFFICER PATTON, is sued in his individual capacity.

## STATEMENT OF FACTS

**29.** Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "28" of this complaint with the same force and effect as though fully set forth herein.

### MR. FOREMAN'S 2006 ARREST AND PRIOR HEALTH HISTORY

**30.** On January 11, 2006, Plaintiff was arrested by the Lansing Police Department and was indicted by a federal Grand Jury in February of 2006, and Plaintiff was sentenced as to federal counts of his Indictment to 300 months of imprisonment on September 7, 2006, thus, due to the serious nature of his COVID-19 Virus and the substantial impact the infectious disease had upon his body

Chief Judge Robert J. Jonker ORDERED Plaintiff to be released on July 28, 2020, therefore, Plaintiff was released after a quarantine period on August 10, 2020.

31. Plaintiff was housed at FCI-Milan in Milan, Michigan at all relevant times with the exception of being transferred to St. Joseph Hospital in Ypsilanti, Michigan from April 10, 2020, through May 1, 2020.

## MR. FOREMAN'S MEDICAL HISTORY IN BOP CUSTODY

32. Plaintiff was housed at FCI-Milan in Milan, Michigan from July of 2009 through August 10, 2020, for over 11 years and never had any serious medical injuries with hurting his lower back on one occasion and dental treatment quite regularly, however, Mr. Foreman was quite a healthy person prior to contracting COVID-19 Virus.

33. Plaintiff was called to the FCI-Milan Medical Department on April 6, 2020, were the UNKNOWN MEDICAL STAFF did in fact conduct a Temperature Check of Plaintiff in which revealed that Mr. Foreman did not have a temperature above 100 degrees, however, the UNKNOWN MEDICAL STAFF ordered Plaintiff to be taken to the ("SHU"), for a period of isolation of 14-days over Mr. Foreman's Objections.

34. On April 7, 2020, FCI-Milan Nurse conducted a temperature

8 | P a g e

check on Plaintiff at roughly 12 noon or so and it was determined that he had a Temperature above 100 degrees and Mr. Foreman was immediately transferred from the ("SHU"), to FCI-Milan E-Unit COVID-19 Isolation.

35. On April 9, 2020, NP WEAVER employed an IV into my Arm because I had been working out that day Plaintiff was suffering from Dehydration. Mr. Foreman's whole body was cold and NP WEAVER gave him extra blankets. Before NP WEAVER left she informed Plaintiff that she would inform OFFICER PATTON of my condition and to keep an eye on Plaintiff if he needs anymore Immediate Medical Attention. Later that night Plaintiff asked OFFICER PATTON for Medical Care or Treatment, however, OFFICER PATTON ignored Mr. Foreman's repeated requests all night for Medical Care or Treatment and specifically informed Plaintiff that he was not aware of Plaintiff's medical situation as NP WEAVER had mentioned nothing to him about Mr. Foreman's medical problems or to keep an eye on him as she previously informed Plaintiff.

36. On April 10, 2020, NP WEAVER found Plaintiff passed out on his FCI-Milan E-Unit COVID-19 isolation cell after 6 a.m. after Plaintiff had been deprived of Medical Care or Treatment all night long. NP WEAVER instead of getting Plaintiff immediately to the hospital went to her Office for 45 minutes to one hour to write

9 | P a g e

a Report instead of providing him with Immediate Medical Attention.

37. Upon arrival at St. Joseph Hospital in Ypsilanti, Michigan after being admitted to the hospital on April 10, 2020, it was determined that he was suffering from severe respiratory distress.

38. Within a few days it was determined that Plaintiff was positive for COVID-19 Virus and had to be placed on a Ventilator for which Plaintiff remained for 19 days.

39. On May 1, 2020, Plaintiff was informed by his Doctor at St. Joseph Hospital in Ypsilanti, Michigan that he is recommending and he will undergo 30 days of Rehabilitative Therapy in which did begin on May 1, 2020, however, ended the same day due to FCI-Milan Warden Jonathan Hemingway refusal to pay any further for Rehabilitative Therapy even though he could barely walk only with a Walker having lost 52 lbs. after being on a Ventilator for 19 days and being pronounced dead twice in ICU on April 25, 2020. Against Plaintiffs' Doctors prescribed recommendations for Mr. Foreman to undergo Therapy, he was discharged per Order of FCI-Milan Warden Hemingway and returned to FCI-Milan E-Unit COVID-19 Isolation in a Wheelchair and placed in a dirty one-man cell where he was helpless, thus, locked in the cell for 23 hours and 40 minutes a day.

40. In addition, during relevant times, thus, the Defendants' knew

of and disregarded an excessive risk to Mr. Foreman's health, by failing to take reasonable measures to provide him with access to proper medical attention and/ or delayed such medical attention and was the direct or indirect cause of Plaintiff's contraction of an infectious disease (COVID-19 Virus), and ignoring the Doctor's prescribed recommendation for Plaintiff to undergo Therapy after such Therapy had already commenced. During the 12 to 14 hours Plaintiff was completely deprived of Medical Care or Treatment OFFICER PATTON'S intervention could have prevented the Unnecessary and wanton infliction of prolonged pain and suffering.

**41.** Upon information and belief, during all times mentioned in this complaint, the Defendants were acting in their individual and official capacity, under color of law, to wit, under color of constitution, statute, ordinance, laws, rules, regulations, policies, customs and usages of the United States.

## AS AND FOR A FISRT CAUSE OF ACTION

## Plaintiff v. Defendants JONATHAN HEMINGWAY, UNKNOWN MEDICAL STAFF, NP WEAVER, AND OFFICER PATTON in their individual capacities

## Bivens Claim-Eighth Amendment-Cruel and Unusual Punishment

**42.** Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "41" of this complaint

with the same force and effect as though fully set forth herein.

**43.** Defendants' conduct deprived Plaintiff of his rights protected under the Eighth Amendment to the U.S. Constitution, in that they failed to provide Plaintiff with adequate medical care although they knew or should have known that doing so posed an excessive risk to his health.

**44.** Defendants' deliberate indifference to Plaintiff's serious medical needs constitutes cruel and unusual punishment, and the unnecessary and wanton infliction of pain that the Eighth Amendment prohibits under Estelle v. Gamble, 429 U.S. 97 (1976) and its progeny.

**45.** Defendants UNKNOWN MEDICAL STAFF AND JONATHAN HEMINGWAY deprived Plaintiff of his Eighth Amendment Rights by failing to protect him from the risk and from contraction of an infectious disease (COVID-19 Virus), under Helling v. McKinney, 509 U.S. 25, 33 (1993).

**46.** Defendants have deprived Plaintiff of such rights under color of law and are liable to Plaintiff pursuant to Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and its progeny.

**47.** UNKNOWN MEDICAL STAFF as Defendant herein who placed Plaintiff in the ("SHU"), on April 6, 2020. On April 6, 2020,

at roughly 11:30 a.m. or so Plaintiff was called to FCI-Milan Medical Department after his roommate Tyrone Valentine #23006-044 was thought to have COVID-19 symptoms and he was placed in FCI-Milan E-Unit COVID-19 isolation at 10:30 a.m. or so on April 6, 2020, thus, after being given a Temperature Check he had no symptoms at all or no temperature but was informed due to a new policy enacted that day he would have to be placed in the Special Housing Unit ("SHU") for a 14-day period. Plaintiff was placed in the Special Housing Unit and he had no mask or any cleaning supplies or sanitizing supplies, thus, Mr. Foreman was placed in the ("SHU") on a wing that had federal inmates who had self-surrendered the day or two before from Detroit, Michigan and Chicago, Illinois who were not screened before being admitted for COVID-19 virus, therefore, after those inmates laughed, talked, and coughed pretty much all night at roughly 12 noon Plaintiff had a Temperature was then moved from the ("SHU") to FCI-Milan E-Unit COVID-19 isolation. The cloth mask that Plaintiff went in the ("SHU"), was taken from him upon being admitted in the ("SHU"), during Intake.

Thus, Plaintiff was not protected from an infectious disease (COVID-19 Virus), as his Eighth Amendment protects him thereto, see Helling v. McKinney, 509 U.S. 25, 33 (1993), and Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996).

**48.** JONATHAN HEMINGWAY as Defendant herein violated Plaintiff's Eighth Amendment Rights by failing to have in place a proper Intake Screening Examination for infectious disease (COVID-19 Virus), in which lead to Plaintiff contracting COVID-19 Virus on April 7, 2020. Moreover, failing to have in place a proper procedure to allow Federal inmates placed in the ("SHU") to wear Protective Cloth Mask. Prison officials have an obligation to protect prisoners from the risk of infectious diseases, see Helling v. McKinney, 509 U.S. 25, 33 (1993); and Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996). Prisons and jails are obligated to conduct intake examinations for incoming inmates for infectious disease, see Feliciano v. Rossello Gonzalez, 13 F. Supp. 2d 151, 210 (D.P.R., 1998).

**49.** JONATHAN HEMINGWAY as Defendant herein violated Plaintiff's Eighth Amendment Rights by failing to follow the Doctor's Recommendation that Plaintiff remain in the hospital to undergo 30-Day of physical Rehabilitative Therapy in which Mr. Foreman had lost 52 lbs. and had just got out of ICU on April 26, 2020, after being pronounced dead twice, however, was discharged against the Doctor's order and recommendation to be taken aways by two FCI-Milan Officers back to E-Unit COVID-19 cell in a Wheelchair to dirty cell when I could barely feed myself and could barely stand on my own as my body was so weak. See LaFaut v. Smith,

14 | P a g e

834 F.2d 389, 393-94 (4th Cir. 1987). It follows that Defendants actions constituted 'deliberate indifference' in violation of Plaintiffs' Eighth Amendment Rights of the U.S. Constitution.

50. NP WEAVER as Defendant herein violated Plaintiff's Eighth Amendment Rights by employing an IV into his Arm instead of Simply ensuring that he was provided with six to eight bottles of Water as this ordinarily is how you may treat Dehydration in which was conducted on April 9, 2020. Furthermore, on April 9, 2020, NP WEAVER specifically informed Plaintiff that she would inform Officer Patton of Mr. Foreman's medical issues and to keep an eye on him, however, never informed Officer Patton anything, thus, leading in part to Officer Patton not taking Plaintiff's medical issues seriously.

51. On April 10, 2020, NP Weaver found Plaintiff passed out on his FCI-Milan E-Unit COVID-19 isolation cell after 6 a.m. after being denied Medical Care or Treatment all night long, thus, instead of getting Mr. Foreman taken immediately to the hospital NP WEAVER went to her Office for 45 minutes to one hour to write a Report instead of providing Plaintiff with Immediate Medical Attention.

This constituted 'deliberate indifference' in which violates Plaintiff's Eighth Amendment Rights of the U.S. Constitution.

52. On April 9, 2020, through the early mornings of April 10,

2020, Plaintiff repeatedly beat on his cell door and out the window yelling for someone to provide him with Medical Attention and several times OFFICER PATTON stopped at his cell door and he Plaintiff asked to him to call the Lt. so he could obtain some Medical Attention and that NP Weaver had informed him of his medical Issue, however, Officer Patton informed him that NP Weaver told Him nothing and that Plaintiff looked okay to him and he was not going to bother the Lt. end of story.

As the result of OFFICER PATTON blatantly ignoring my serious Medical needs, thus, Plaintiff was deprived of Medical Care or Treatment for 12 to 13 hours and Mr. Foreman suffered pain and suffering all night long in which constituted deprivation of his serious medical needs in violation of Plaintiff's Eight Amendment Rights of the U.S. Constitution.

53. Plaintiff, states that as the result of the Defendants' deliberate indifference in violation of his Eighth Amendment Rights, thus, he has suffered nerve damage in his Shoulder, Right Thigh Area, Hypertension, While on Ventilator a Catheter was placed in Mr. Foreman's Penis (it was improperly removed roughly), in which lead to him now suffering erection for no longer than 10 minutes, thus, he has been prescribed Tadalafil 20 MG by Dr. Jacob M. Clapper, and suffers post-traumatic stress syndrome

(suffering from anxiety, unable to sleep, waking up in cold sweats, nightmares and pain from numbness in Shoulder sometimes in his left arm and thigh area).

## AS AND FOR A SECOND CAUSE OF ACTION

## Plaintiff v. Defendants JONATHAN HEMINGWAY, UNKNOWN MEDICAL STAFF, NP WEAVER, AND OFFICER PATTON

### in their individual capacities

### Bivens Claim-Fifth Amendment-Substantive Due Process

54. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "53" of this complaint with the same force and effect as though fully set forth herein.

55. Defendants' conduct deprived Plaintiff of his substantive due process rights protected under the Fifth Amendment to the U.S. Constitution, in that they failed to provide Plaintiff with adequate medical care although they knew or should have known that doing so posed an excessive risk to his health and depriving access to an Protective Mask and placing in the ("SHU"), along with federal Inmates who were not properly examined for COVID-19 Virus.

56. Defendants have deprived Plaintiff of such rights under color of law and are liable to Plaintiff pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and its progeny.

**57.** The acts and omissions of Defendants described more fully above were outside of the scope of "medical or related functions" as defined in 42 U.S.C. Section 233 (a). The acts and omissions of Defendants UNKNOWN MEDICAL STAFF and NP WEAVER described more fully above, in failing to provide treatment for, or access to treatment for, Plaintiff's serious medical condition were so far below acceptable standards of care, that Defendants could not have been making truly medical judgments.

**58.** Defendants failed to provide Plaintiff with adequate medical care although they knew or should have known that doing so posed an excessive risk to his health, and as a result of their action or lack thereof, Plaintiff's substantive due process rights protected under the Fifth Amendment to the U.S. Constitution were violated.

## AS AND FOR A THIRD CAUSE OF ACTION

### Plaintiff v. Defendant UNITED STATES OF AMERICA

### Federal Tort Claims Act-Medical Malpractice

**59.** Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs "1" through "58" of this complaint with the same force and effect as though fully set forth herein.

**60.** Commencing on or about April 6, 2020, and at all times mentioned, Defendants, individually or through their agents, servants, and/ or employees undertook and endeavored to, and

did advise and treat Mr. Foreman professionally as a healthcare provider or physician, including providing diagnosis, care and treatment for his COVID-19 Virus and other medical conditions.

61. At all times complained of herein, Medical Defendants represented themselves to be skilled, competent and careful physicians, and healthcare providers with the knowledge and capacity to practice medicine in accordance with the standards common and acceptable in the community.

62. As set forth herein, the Medical Defendants' treatment of Mr. Foreman fell below acceptable standards and skills.

63. Defendants thus breached the duty they owed to Mr. Foreman.

64. Defendants did not possess the necessary skill to treat Mr. Foreman.

65. Defendants neglected to apply the skill they did have.

66. Defendants did not use reasonable care in applying the skill they had.

67. Defendants mistreated Mr. Foreman and engaged in medical malpractice which fell below the customary and acceptable standards.

68. Defendants improperly placed Plaintiff in the ("SHU"), and even though he has no Temperature or shown any symptoms of COVID-19 Virus, thus, Plaintiff a day or so later was infected after

Plaintiff was taken to the ("SHU"), and his Protective Mask and Sanitizing items were not provided.

**69.** Defendant improperly employed an IV in Plaintiff's Arm instead of providing him with six to eight bottles of water and failed to inform Officer Patton of Mr. Foreman's serious medical problems and delaying transferring him to the St. Joseph Hospital for 45 minutes to one hour while NP WEAVER prepared a Report, thus, the care and treatment of Plaintiff fell below acceptable standards and skills, and defendant breached the duty which they owed to Mr. Foreman.

**70.** The Defendants and/ or their employees, agents, and/ or servants, acting within the scope of their office or employment, breached their duty to the plaintiff by failing to provide proper and adequate medical treatment and care to the Plaintiff and his urgent and serious medical needs within a reasonable time despite numerous requests and despite the obvious risks of permanent worsening of Plaintiff's conditions.

**71.** As a direct, legal and proximate result of the foregoing, including the aforesaid negligent acts and omissions and medical malpractice of the defendants, Plaintiff suffered injuries and damages including but not limited to permanent nerve damage, permanent erection damage (for keeping an erection), Hypertension, suffering

post-traumatic syndrome (suffering from anxiety, unable sleep, nightmares and pain through my left Shoulder and Arm and Thigh Area).

**72.** Mr. Foreman's injuries were inflicted solely through the negligence of the defendants, and through no fault or want of care of negligence or contributory negligence on the part of Mr. Foreman.

**73.** Defendants' conduct was grossly negligent in that defendants were so careless as to show complete disregard for the rights and safety of Mr. Foreman.

**74.** Defendants engaged in willful misconduct in that defendants acted in such a reckless manner as to completely disregard the consequences of their actions.

**75.** Defendants' acts and omissions constitute the tort of medical malpractice under the laws of the State of Michigan.

**76.** Under the Federal Tort Claims Act, defendant United States of America is liable for the individual Defendants' acts and omissions within the scope of their employment.

## AS AND FOR A FOURTH CAUSE OF ACTION

## Plaintiff v. Defendant UNITED STATES OF AMERICA

## Federal Tort Claims Act-Negligence

**78.** Plaintiff repeats, reiterates, and realleges each and every

allegation contained in paragraphs "1" through "77" of this complaint with the same force and effect as though fully set forth herein.

**79.** All Defendants herein had a duty to Plaintiff who was at the time an inmate at FCI-Milan in Milan, Michigan, thus, is the same as that owed to private patients, see District of Columbia v. Mitchell, 533 A.2d 629, 648 (D.C. 1987); Moss v. Miller, 254 Ill. App. 3d 174, 625 N.E.2d 1044, 1052 (1993).

**80.** All Defendants herein breach care of that duty as follows: FCI-Milan Unknown Medical Staff who placed Plaintiff in ("SHU") on April 6, 2020; NP Weaver negligently employed an IV in Mr. Foreman's arm to treat Dehydration instead giving him six to eight bottles of water to drink; failing to inform Officer Patton of Plaintiff's serious medical problems on April 9, 2020, before she went home; and after finding Plaintiff passed out on April 10, 2020, after 6 a.m. taking over 45 minutes to one hour to transport him to the hospital while she prepared a Report; Jonathan Hemingway removal of Plaintiff from the hospital against the Doctor's recommendation and failing to permit Protective Mask to wore in the ("SHU"); and Officer Patton disregarded Plaintiff's serious medical needs refusing to call the Lt. and saying that Mr. Foreman looked okay to him instead of getting him medical care or treatment.

**81.** Defendants actions were the causation of Plaintiff's injuries, thus, all the federal employees listed herein had a duty to Benjamin P. Foreman consistent with 18 U.S.C. 4042 (a) (2)-(3), for the safekeeping, caring and protection of Plaintiff, thus, "but for" these federal employees' blatantly negligence, therefore, Mr. Foreman would not have contracted COVID-19; almost died from COVID-19 virus (was pronounced dead twice); suffering from nerve damage in his left Shoulder and Thigh Area; was denied medically recommended Physical Therapy; Delayed Medical Treatment and Attention; and treated in an inhumane manner after being forced to be discharged from St. Joseph Hospital. Permanent injuries with his penis due a lack of erection after 10 minutes or less. Post-traumatic stress syndrome (suffering from anxiety, unable to sleep, nightmares, waking up in cold sweats). Thus, Mr. Foreman's physical and mental injuries are the proximate cause of the breach of duty by federal employees' in which are employed by the United States acting within the scope of their duties, therefore, the United States is in fact liable for their negligence in the case herein.

**82.** Defendants actions herein result and entitle Benjamin P. Foreman to damages. Plaintiff is entitled to be compensated for His physical injury and mental injuries in which are still on-going to date, thus, based upon the actionable damages resulting from the

negligence by federal employees' listed herein the United States is liable in the sum of $2.5 million dollars in the case herein.

Respectfully Submitted,

Date: 02/13/22

*Benjamin P. Foreman*

Mr. Benjamin P. Foreman

716 Edgemont Blvd.

Lansing, MI. 48917-2217

(517) 455-6305

## **CERTIFICATE OF SERVICE**

I, Benjamin P. Foreman, certify that on February, 13th 2022, I mailed by 2-Day Priority Mail the Original and two copies of my Pro Se Civil Suit Action to this Honorable Court at the said address listed below herein:

Clerk of the Court

U.S. Courthouse

231 W. Lafayette Blvd.

Detroit, MI. 48226

Date: 02/13/22

/s/ *Benjamin P. Foreman*

Mr. Benjamin P. Foreman
Pro Se Plaintiff

# ATTACHMENT A



**U.S. Department of Justice**
Federal Bureau of Prisons

*North Central Regional Office*

---

*Office of Regional Counsel*

400 State Avenue
Tower II, Suite 800
*Kansas City, KS   66101*

August 17, 2021

Benjamin Foreman
2423 Springdale Drive
Lansing, MI   48906

Re:   Claim Number TRT-NCR-2021-02991
      Amount Claimed: $ 2,500,000.00

       CERTIFIED RECEIPT       7008 3230 0003 2655 6558

Dear Claimant:

Your above referenced tort claim has been considered for administrative review pursuant to 28 CFR § 0.172,   Authority: Federal Tort Claims and 28 CFR Part 14, Administrative Claims Under Federal Tort Claims Act.   Investigation of your claim did not reveal that you suffered any personal injury as a result of the negligent acts or omissions of Bureau of Prisons employees acting within the scope of their employment.

As a result of this investigation, your claim is denied.   This memorandum serves as a notification of final denial under 28 CFR § 14.9, Final Denial of Claim. If you are dissatisfied with our agency's action, you may file suit in an appropriate U.S. District Court no later than 6 months after the date of mailing of this notification.

Sincerely,

Richard M. Winter
Regional Counsel

# ATTACHMENT B

## Declaration Of Benjamin P. Foreman

I, Benjamin P. Foreman, swear and declare under the penalties of perjury that the statements below are all true to the best of my knowledge, information, and belief.

1. I have been incarcerated for 14 ½ years approximately and have been here at FCI-Milan since July of 2009.

2. I 'am a forty-four-year-old African American man who is 5'8 ½ inches tall and was 195 lbs. in excellent shape as I worked out regularly and took good care of myself. I was perfectly healthy with no underlying health conditions, however, somehow, I became part of the unfortunate 5% of Americans who would contract COVOD-19 virus and have severe life-threatening health problems or die.

On April 6, 2020, my roommate requested to see medical staff as had received bad news the day before, thus his Hypertension he suffers was mistaken for having symptoms for COVID-19 virus, therefore he was placed in E-Unit COVID-19 isolation later that afternoon.

I was called to Medical and given a Temperature check in which shown that I did not have a Fever. However, the medical staff informed me that because my roommate showed symptoms a new policy started today required them to place me in the special Housing Unit (SHU) isolation for a 14-Day period. I was placed in the (SHU) and had mask

1

taken away from me even though I Committed no violation of BOP policy or rules and was handcuffed then

placed in a cell with another individual from the HONOR Unit. The wing that I was placed on unfortunately was FULL of guys from Chicago and Detroit who had just self-surrendered (fresh from the streets), however, they specifically informed me that they were NEVER tested before being placed in the (SHU) and admitted to FCI-Milan compound. On April 7, 2020, after several guys had been coughing all night when the nurse came around I now had a Fever and was placed in E-Unit COVID-19 isolation. On April 9th I was yelling out for medical help all night. Officer Patton came to my cell and told me that he wasn't going to bother the lieutenant and that I looked okay to him. Officer Patton also informed me that NP Weaver never informed him of my medical condition. On April 10th 2020, after 6:00 a.m. FCI-Milan Medical staff NP Weaver was making her daily rounds in E-Unit where she discovered that, I passed out on my floor in the E-Unit single man room. On April 10, 2020, I was placed in a wheelchair and rushed in an Ambulance to St. Joseph Hospital in which was determined that I was positive for the Covid-19 virus in which had infected 1 Lung and part of my other Lung. **3.** After a few days of being hospitalized I was placed on a ventilator and on Friday, April 24th, 2020, I was rushed to ICU that night where 3 St. Joseph Medical staff worked on me; however, I was pronounced

2

dead twice but somehow by God's grace I made it through, thereafter I was on my road to recovery.

4. On Friday, May 1, 2020, the day my Doctor at St. Joseph Hospital had ordered me to undergo a 30-day Therapy process, however I was placed in handcuffs and wheeled to the car and transported back to FCI-Milan. Even though I could barely walk, and my body was so weak as I lost 45lbs. While being hospitalized, thus I was placed in a wheelchair upon arrival at FCI-Milan and again placed in a room (cell) in E-Unit COVID-19 isolation. I started off on 23 hrs. and 40 mins. lockdown, therefore having 20 minutes out the room then it increased to 23 hrs. and 30 mins. Being allowed out for 30 mins a day. Then it was later increased to 23 hrs. for shower, Email and Telephone.

5. On Thursday, May 14, 2020, FCI-Milan medical staff NP Weaver cleared me to return to the HONOR unit in General Population as reflected by the Government's medical Records from FCI-Milan, thus she confirmed that my COVID-19 virus "resolved"

6. My current complications I suffer from in the aftermath of my Battle with COVID-19 virus which is as follows:

A. Nerve damage/ Numbness in my left shoulder running down to my back arm area which did not exist prior to being hospitalized.

B. Numbness; Swelling and pains shooting in my right thigh area, I believe a potential Blood Clog.

3

**C.** Hypertension.

**D.** After the Catheter was improperly removed roughly, thus, I now can only keep an erection for no longer than 10 minutes and I was prescribed Tadalafil 20 MG by Dr. Jacob M. Clapper

**7.** While hospitalized at St. Joseph Hospital it was determined that, I have Hypertension, thus I must take daily two tablets of Carvedilol 3.125 MG and one tablet daily of Amlodipine 10 MG, thus creates a heighted risk of re-infection of COVID-19.

**8.** I was prescribed 325 MG Acetaminophen for the pain I suffer in my thigh area but after weeks of complaining the FCI-Milan Medical staff have yet to get to the root of the problem with my current health issues.

**9.** The Defendants' in my Civil-Suit Cause of Action are liable and the United States is liable in the sum of 2.5 million dollars as my Fifth and Eighth Amendment Rights of the U.S. Constitution were violated and negligence occurred by BOP employees in which the United States is liable in the situation herein.

I, Benjamin P. Foreman, declare under penalty of perjury pursuant to 28 U.S.C. 1746 (1), the laws of the United States of America that the above herein is true and correct.

4

Respectfully Submitted

Executed on February 13th, 2022

x *Benjamin P. Foreman*

Mr. Benjamin P. Foreman

716 Edgemont Blvd.

Lansing, MI. 48917-2217

(517) 455-6305

5

AFFIDAVIT

County of Washtenaw                     )   S.S.
State of Michigan                       )


I, Daniel Beenen, do so swear under penalty of perjury that the following statement is true and accurate to the best of my knowledge, information, and belief.


1)    I have been incarcerated at FCI-Milan in Milan, Michigan since 2010; and have known Benjamin Preston Foreman, Sr. since my arrival.

2) I was infected with the COVID-19 virus in the spring of 2020 and therefore, housed in E-Unit at FCI-Milan.

3)    On the evening of April 9th, 2020, approximately 90 minutes after FCI-Milan NP Weaver administered and IV to Mr. Foreman, Mr. Foreman yelled out for medical treatment, but no one arrived to help him.

4)    Several times, the officer on duty in E-Unit refused to contact medical staff, and refused Mr. Foreman's request for a Lieutenant claming, "The Lt. will just be pissed off and you look fine to me."

4)    The officer on duty refused to contact medical staff following this interaction.

5)    Mr. Foreman could be heard yelling from his cell door all night, asking for medical help. None was given

6)    Mr. Foreman passed me his emergency contact information and asked me to contact his loved ones to relay a message in the event of his death.

7)    The next morning (April 10th, 2020), NP Weaver found Benjamin Preston Foreman passed out and unresponsive in his cell in FCI-Milan's E unit.

8)    Mr Preston was removed by medical staff in a wheel chair.

9)    The FCI-Milan E-Unit was converted to a quarantine unit in April of 2020.

10)   Inmates in this unit were locked in a cell with no emergency call button and no observation other then the unit officer.

11)   During my time in E-Unit, I observed a total lack or Custody staff and medical staff conducting "rounds" to check on inmates locked in cells.

FUTHER AFFIANT SAYETH NOT

I do so swear that the above statement was made and is being signed under penalty of perjury pursuant to Title 28§1746(1) of U.S.C.S.


Executed on ___10/27/2021_____          Respectfully Submitted

                                            Daniel Beenen #03490-029


(1 of 2)

FCI-Milan
P.O. Box 1000-
Milan, MI. 48160

## Affidavit of Tyrone Valentine

I, Tyrone Valentine, swear and declare under the penalties of perjury that the statements below are true to the best of my knowledge, information and belief.

1. I have been incarcerated here at FCI-Milan since 2015.

2. I'am the roommate of Benjamin P. Foreman # 12658-040, I have personally observed the pain & suffering he is going through in the aftermath of COVID-19 virus he now has Hypertension, his shoulder is numb and his right thigh area makes him walk with a limb at night sometimes while he sleeps he wakes me up because of the aching noise he makes quite often. For weeks straight he woke up in a cold wet sweat

(1)

from the bad dreams he was having as he specifically informed me they entailed the horrible experience he endured in ICU while at St. Joesph Hosiptal.

3. Before COVID-19 virus, I personally witnessed Mr. Foreman on the scale before the gym closed he weighed approx. 195 lbs. pretty much all muscle mass, however once he came back to H-B-221$^u$ after his battle with COVID-19 and clearance from FCI-Milan Medical Staff he was so little I could not believe it at all, thus it looks like he has lost about 45 lbs. or so.

4. It is so sad how the FCI-Milan Medical Staff continue to deny Foreman adequate Medical Treatment for his thigh and shoulder, I pray he does not have a blood clog in his thigh area but nobody cares to discover what the

(2)

real problem is all he has got from Medical Staff is Tylenol for the pain he suffers.

5. The COVID-19 pandemic has spread through FCI-Milan over the past 3 weeks A-Unit was quarantined; and currently B-l & B-Unit entire units are quarantined due to positive COVID-19 cases of inmates.

6. Since March 31, 2020, FCI-Milan has been on a 23/1 Lockdown.

I, Tyrone Valentine, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 (1), the laws of the United States of America that the above herein is true and correct.

(3)

Respectfully Submitted,

Executed on June , 17th, _Tyrone Valentine_

Mr. Tyrone Valentine

#23006-044

FCI- Milan

P.O. Box 1000

Milan, MI. 48160-0190

2020.

(4)

## Affidavit of Diondre Smith

I, Diondre Smith, swear and declare under the penalties of perjury that the statements below are all true to the best of my knowledge, information and belief.

1. I have been incarcerated here at FCI-Milan for roughly 21 months.

2. The current conditions here at FCI-Milan are "unsafe" and "dangerous," I personally have seen that FCI-Milan Medical Staff are under staffed, thus you have registered Nurses prescribing medications to inmates.

3. The COVID-19 pandemic has spread through FCI-Milan over the past 3 weeks A-Unit was quarantined; and currently B-1 & G-Unit entire units are quarantined due to to positive COVID-19 cases of inmates.

4. I talk to Benjamin P. Foreman #12658-040 all the time after he was discharged from the St. Joesph Hospital on May 1, 2020, I was being housed also in E-Unit COVID-19 isolation he was brought into the Unit in a Wheelchair he was so weak he could not clean up his room or make his bed so I assisted him. While in E-Unit we were only permitted to come out our rooms (cells) for 30 minutes in which to take a shower, e-mail and utilize the Telephone. Since I've moved back to the HONOR-Unit we are allowed 1 hour out to take shower, email and utilize the Telephone so we are on 23/1 Lockdown due to the COVID-19 pandemic. I could not believe when I first seen Mr. Foreman on May 1st the amount of weight he lost as he at least 190 lbs. with alot of muscle mass, however all that was gone.

5. I have spoken to Mr. Foreman daily while in E-Unit he has

(1)

experienced alot of pain and hated he was denied Thearpy as his Doctor ordered at St. Joesph Hospital in which he never received as he was discharged on May 1st and brought back to FCI-Milan then wheeled into a cell.

6. To date Mr. Foreman has expressed the stress and frustration caused by the inadequate Medical Care he is receiving from FCI-Milan Medical Staff as he suffers pain from his right shoulder being numb and his right thigh being numb, swellen complaining to me of a sharp pain periodically. He was upset when all the Medical Staff here want to do is give him Tylenol for the pain not to try to figure out the problem with his Health Issues.

I, Diondre Smith, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 (1), the laws of the United States of America that the above herein is true and correct.

Respectfully Submitted,

Executed on JUNE 16, 17, 2020.

Mr. Diondre Smith
#54885-039
FCI-Milan
P.O. Box 1000
Milan, MI. 48160-0190

(2)

## Affidavit of Roy M. Applewhite

I, Roy M. Applewhite, swear and declare under the penalties of perjury that the statements below are all true to the best of my knowledge, information and belief.

1. I have been incarcerated here at FCI-Milan since 2010.

2. The COVID-19 pandemic has spread through FCI-Milan over the past 3 weeks A-Unit was quarantined; and currently B-1 & G-Unit entire units are quarantined due to positive COVID-19 cases of inmates.

3. I've seen Benjamin P. Foreman #12658-040 and have known him since my arrival at FCI-Milan over the years through lifting weights he gained alot of muscle mass he looked like he was like 190 lbs. to 200 lbs. very solid, however once he arrived back to the HONOR Unit in mid-May of 2020 he was so small I could not believe it I was completely shocked and very concerned for his well-being after his 3-week battle with COVID-19 virus at St. Joesph Hospital.

4. Since March 31, 2020, we have been on a 23/1 Lockdown.

I, Roy M. Applewhite, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 (1), the laws of the United States of America that the above herein is true and correct.

Executed on June 17, 2020.
2020.

Respectfully Submitted,

Mr. Roy M. Applewhite
#13755-040
FCI-Milan
P.O. Box 1000
Milan, MI. 48160-0190

Affidavit of James Coleman

I, James Coleman, swear and declare under the penalties of perjury that the statements below are all true to the best of my knowledge, information and belief.

1. I have been incarcerated here at FCI-Milan since 2013.

2. I know Benjamin P. Foreman # 12658-040 and at one point for over a year he was roommate in the HONOR Unit.

3. I was shocked to hear Mr. Foreman contracting COVID-19 virus and that he suffered from such a severe case as the result of the virus. I know he was close to 200 lbs. pretty much all muscle mass, however upon his

(1)

arrival back to the HONOR Unit in mid-May of 2020, he had lost at least 45 to 50 lbs. I could not believe it.

4. He complains to me regularly about the pain & suffering of his right thigh area he thinks it is a blood clog but Medical Staff here just gave him Tylenol for the pain he endures without the needed Medical Treatment he so BADLY SEEKS after.

5. The COVID-19 pandemic has spread through FCI-Milan over the past 3 weeks A-Unit was quarantined; and currently B-1 & G-Unit entire units are quarantined due to positive COVID-19 cases of inmates.

6. Here at FCI-Milan we are on a 23/1 Lockdown in which has been going

(2)

on since March 31, 2020.

I, James Coleman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 (1), the laws of the United States of America is true and correct.

Respectfully Submitted,

Executed on <u>JUNE</u>, 17th, Mr. James Coleman

Mr. James Coleman
#40623-039
FCI -Milan
P.O. Box 1000
Milan, MI. 48160-0190

2020.

(3)

## Affidavit of David Kenney

I, David Kenney, swear and declare under the penalties of perjury that the statements below are all true to the best of my knowledge, information and belief.

1. I have been incarcerated here at FCI-Milan for several years.

2. The COVID-19 pandemic has spread through FCI-Milan over the past 3 weeks A-Unit was quarantined; and currently B-1 & G-Unit entire units are quarantined due to positive COVID-19 cases of inmates.

3. I talk to Benjamin P. Foreman #12658-040 he has lost so much weight since his COVID-19 ordeal and he walks funny as his thigh bothers him due to the pain he suffers it is sad all the FCI-Milan Medical Staff will do is prescribe Tylenol, however not trying to figure out the root of his Health issues.

4. Since March 31, 2020, their has been a Nation-Wide Lockdown which is 23/1, come out 1 hour all the rest of the time you are confined to a 8 ½ x 11 room (cell) with one other person.

I, David Kenney, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 (1), the laws of the United States of America that the above herein is true and correct.

Respectfully Submitted,

(1)

Executed  on  June___, 17,     _Paul Kenny_

Mr. David  Kenny

2020.

# 06513 - 040

FCI - Milan

P.O. Box 1000

Milan, MI. 48160-0190

(2)

**UNITED STATES POSTAL SERVICE** ⓡ

**POSTAL MONEY ORDER**

Serial Number

27971650618

Year Month Day 2022-02-17   Post Office 489249   U.S. Dollars and Cents

$405.00

Four Hundred Five Dollars and 00/100 ***********

Amount

Clerk   10

Pay to United States, Clerk's District Office

Address 231 W. Lafayette Blvd.
Detroit, MI 48226

From Benjamin P. Foreman
Address 716 Edgemont Blvd.
Lansing, MI 48917

Memo Filing Fee Civil Suit

SEE REVERSE WARNING. • NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

⑆00000800 2⑈   279716506 18⑈

# Incorrect filing
# fee submitted.

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES
POSTAL SERVICE.

Retail

**P**

US POSTAGE PAID

**$8.95**

Origin: 48924
02/17/22
2552700205-10

PRIORITY MAIL 2-DAY®

1 Lb 7.80 Oz

1004

EXPECTED DELIVERY DAY: 02/22/22

C052

SHIP
TO:
231 W LAFAYETTE BLVD
DETROIT MI 48226-2700

USPS TRACKING® #

9505 5121 3167 2048 5698 27

- Expected deliv
- Most domestic
- USPS Tracking
- Limited interna
- When used inte

s apply).*

ations.

*Insurance does not c
Domestic Mail Manua
** See International M

coverage.

**FLAT RA**
ONE RATE ■ A

**TRACKE**

kage Pickup,
code.

PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

FROM:

**PRIORITY**
★ **MAIL** ★

UNITED STATES
POSTAL SERVICE ®
VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Mr. Benjamin P. Foreman
716 Edgemont Blvd.
Lansing, MI. 48917

RECEIVED
FEB 24 2022
CLERK'S OFFICE
U.S. DISTRICT COURT

To: Clerk of the Court
U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, MI. 48226

Label 228, March 2016          FOR DOMESTIC AND INTERNATIONAL USE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.