UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN P. FOREMAN,

     Plaintiff,                Case No.  2:22-cv-10401

                                      District Judge Laurie J. Michelson

v.                               Magistrate Judge Kimberly G. Altman

UNITED STATES OF AMERICA,
JONATHAN HEMINGWAY,
UNKNOWN MEDICAL STAFF,
NP WEAVER, and OFFICER
PATTON,

     Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT JONATHAN HEMINGWAY'S MOTION TO DISMISS (ECF No. 14)
## AND
## DENY PLAINTIFF'S MOTION TO STRIKE (ECF No. 21)[1]

I.     Introduction

This is a civil rights case.  Plaintiff Benjamin P. Foreman (Foreman),

proceeding *pro se*, filed a complaint naming the United States of America (the

government), Warden Jonathan Hemingway (Hemingway), NP (Nurse

Practitioner) Weaver (Weaver), Officer Patton (Patton), and unknown medical staff

---

[1] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

as Defendants.  He asserts claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (FTCA), alleging that defendants violated his constitutional rights while he was incarcerated at the Federal Correctional Institution in Milan, Michigan (FCI Milan).  *See* ECF No. 1.  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned.  (ECF No. 10).

Before the Court are Hemingway's motion to dismiss (ECF No. 14) and Foreman's motion to strike Hemingway's motion (ECF No. 21).  Both are fully briefed.  (ECF Nos. 20, 24, 25).  For the reasons that follow, the undersigned RECOMMENDS that Foreman's motion be DENIED and that Hemingway's motion be GRANTED IN PART and DENIED IN PART.

## II.    Statement of Facts

The following facts are gleaned from the complaint, which are taken to be true for the purposes of this Report and Recommendation.  *See Meyers v. Cincinnati Bd. of Ed.*, 983 F.3d 873, 879 (6th Cir. 2020).

Foreman was housed at FCI Milan during all relevant times, other than his transfer to St. Joseph Hospital from April 10, 2020 to May 1, 2020.  (ECF No. 1, PageID.8).  Foreman states that on April 6, 2020, he was unnecessarily transferred to a special housing unit after a temperature check revealed that his temperature

2

was not above 100 degrees. (*Id*.). The next day, his temperature rose above 100 degrees, and he was transferred from the special housing unit to a COVID-19 isolation unit. (*Id*., PageID.8-9).

On April 9, 2020, Foreman began suffering from dehydration after working out that day, and Weaver gave him intravenous fluids. (*Id*., PageID.9). Weaver left Patton in charge of Foreman upon leaving, but that night Patton ignored all of Foreman's requests for medical care or treatment. (*Id*.). Patton denied Weaver informing him to keep an eye on Foreman or apprising him of Foreman's condition. (*Id*.). The next morning, Weaver found Foreman unconscious in his cell. (*Id*.). Weaver failed to provide immediate medical treatment, but Foreman was eventually sent to the hospital later that day, where he was diagnosed with COVID-19 and placed on a ventilator for 19 days. (*Id*., PageID.9-10).

While on the ventilator, Foreman lost 52 pounds and was pronounced dead twice. (*Id*., PageID.10). Despite the severity of the illness, Foreman eventually recovered. (*Id*., PageID.10).

On May 1, 2020, Foreman's doctor recommended 30 days of rehabilitative therapy. (*Id*.). Foreman began therapy that day, but Hemingway did not allow Foreman to continue therapy and instead ordered him to be returned to custody, despite Foreman barely being able to walk. (*Id*.). When Foreman retuned to FCI Milan, he was placed in the COVID-19 isolation unit "in a dirty one-man cell

3

where he was helpless [and] locked in the cell for 23 hours and 40 minutes a day."
(*Id*.).

Foreman asserts that Hemingway recklessly caused him to contract COVID-19 by failing to both provide face masks for inmates in special housing units and conduct intake examinations for infectious diseases among incoming inmates. (*Id*., PageID.14). Foreman also asserts that Hemingway acted deliberately indifferent to his medical needs by denying him rehabilitative therapy and returning him to his cell in poor health. (*Id*., PageID.14-15). Foreman characterizes Hemingway's actions as Eighth Amendment violations constituting cruel and unusual punishment as well as Fifth Amendment violations of substantive due process. (*Id*., PageID.16-18).

Foreman asserts claims against the government under the Federal Tort Claims Act for medical malpractice and negligence. (*Id*., PageID.18-24).

### III. Procedural History

Foreman caused summons to be issued for all four Defendants on April 11, 2022, and attempted service by certified mail. (ECF No. 4). The docket reflects that service was made on April 14, 2022 for all Defendants. *See* ECF Nos. 5, 6, 7, 8.[2] For Hemingway, Weaver, and Patton, the summons and copy of the complaint

---

[2] The government did not challenge service and filed an answer to the complaint. *See* ECF No. 12.

4

were sent to their alleged place of employment, FCI Milan, at 4004 Arkona Rd,
Milan, MI 48160. *Id*. Foreman did not select "restricted delivery" for his service,
and each parcel was signed for by the same individual, who does not appear to be a
named defendant. *Id*. Nevertheless, each defendant was given a date by which
their answer was due of either May 5, 2022 or June 13, 2022. *Id*.

On June 1, 2022, Foreman filed a motion for default judgment against
Hemingway and Patton. (ECF No. 9). The undersigned issued a report and
recommendation recommending that the motion be denied and explaining that
service appeared to be deficient; Foreman did not sustain his burden of showing
that service was " 'reasonably calculated' to provide actual notice to defendants."
(ECF No. 22 (citing *Robinson v. Genesee Cnty. Sheriff's Dep't*, No. 16-CV-13805,
2017 WL 2403572, at *5 (E.D. Mich. June 2, 2017)). The report and
recommendation was adopted. (ECF No. 28). To date, Foreman has not attempted
to re-serve Hemingway, Patton, or Weaver. However, Hemingway has availed
himself of the Court's jurisdiction with the present motion. *Lantz v. Priv. Satellite
Television, Inc.*, 865 F. Supp. 407, 409 (E.D. Mich. 1994) ("[A]n objection to
personal jurisdiction is waived where a defendant does not challenge the court's
personal jurisdiction over him within his first responsive pleading to the plaintiff's
action." (citing Fed. R. Civ. P. 12(b)(6) and 12(h)(1))).

IV.    Legal Standard

5

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

6

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

## V.    Discussion

### A.    Motion to Strike

Foreman argues that Hemingway's motion to dismiss is untimely and should

therefore be stricken.  Specifically, he says that the motion was not filed within 60

days of receiving service, as required by Federal Rule of Civil Procedure 12(a)(2)

and (a)(3) for the United States and its officers or employees.[3]  (ECF No. 21,

PageID.239).  He asserts the same argument in response to Hemingway's motion

to dismiss.

A 12(b)(6) motion is required to be made "before pleading if a responsive

pleading is allowed."  Fed. R. Civ. P. 12(b).  Based on the date service was made

according to the docket, Hemingway was required to file a responsive pleading by

---

[3] Foreman also argues that the motion was untimely because it "was not filed before pleading," though he acknowledges that Hemingway has not filed an answer.  (ECF No. 21, PageID.239).  As Hemingway acknowledges, under Rule 12(a)(4)(A) he will be required to serve an answer within 14 days of a ruling on his motion if it is denied in whole or in part.  (ECF No. 24, PageID.260).

June 13, 2022.  (ECF No. 6).  His motion was filed on June 21, 2022.  (ECF No. 14).  However, Hemingway responds that, because he was never properly served, the 60-day time period within which to respond never began to run.  As noted above, the Court has found that service on Hemingway was indeed improper.  (ECF Nos. 22, 28).  Thus, his answer is not yet due, and his motion was timely.  *See, e.g.*, *Wallace v. Interpublic Grp. of Companies, Inc.*, No. 09-11510, 2009 WL 1856543, at *2 (E.D. Mich. June 29, 2009) (determining that removal was not untimely where plaintiff never achieved service); *Townsend v. Schofield*, No. 14-2861-JDT-DKV, 2015 WL 5254604, at *8 (W.D. Tenn. Sept. 9, 2015) ("Because the Defendants were not served with process prior to the filing of this motion, they were under no obligation to answer the complaint[.]"); *Weaver v. Moamis*, No. 4:14CV311, 2015 WL 874759, at *4 (N.D. Ohio Feb. 27, 2015) ("According to the docket, [the defendant] was never served, and, as a consequence, his answer could not be untimely filed.").  Because Hemingway was never properly served with the complaint, his answer is not due and his motion to dismiss is timely.  As such, Foreman's motion to strike should be denied.

### B.    Motion to Dismiss

#### 1.    *Bivens* Liability

##### a.    Standard

Foreman asserts liability via *Bivens*, *supra* and its progeny, under the Fifth and Eighth Amendments for failing to prevent him from contracting COVID-19 and for withholding and denying his access to proper medical care and treatment both before and after he contracted the virus.  (ECF No. 1, PageID.2).  Hemingway argues that Foreman's allegations do not fall under the purview of cases where liability has been extended under *Bivens* and that the Court should not extend this remedy to Foreman's new contexts.

"To state a claim under *Bivens*, a plaintiff must allege that he was 'deprived of rights secured by the Constitution or laws of the United States' and that 'the defendants who allegedly deprived [him] of those rights acted under color of federal law.' " *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *2 (6th Cir. Aug. 31, 2022) (quoting *Marie v. Am. Red Cross*, 771 F.3d 344, 364 (6th Cir. 2014) (emphasis omitted)).  To date, the Supreme Court has extended *Bivens* liability to federal officials in only three contexts:

> (1) under the Fourth Amendment for a violation of the prohibition against unreasonable searches and seizures of a private citizen's residence, *Bivens*, 403 U.S. at 389, 397;
>
> (2) under the Fifth Amendment Due Process Clause for gender discrimination, *Davis v. Passman*, 442 U.S. 228, 230–31, 248–49 (1979); and
>
> (3) under the Eighth Amendment for failing to provide adequate medical treatment to a prisoner, *Carlson v. Green*, 446 U.S. 14, 16 n.1, 19 (1980).

*Id.*  Since 1980, the Supreme Court has rejected extension of *Bivens* to new

contexts on 12 different occasions.  *Egbert v. Boule*, —— U.S. ——, 213 L. Ed. 2d

54, 142 S. Ct. 1793, 1800 (2022) (collecting cases).

In its latest ruling, the Supreme Court declined extension of the doctrine to a

Customs and Border Protection agent accused of violating the plaintiff's Fourth

Amendment rights by entering his private property and using excessive force

against him.  *Id.*  The only factor distinguishing the allegations in *Egbert* from

those in *Bivens* was the federal agency involved, which introduced a border-

security context to the otherwise recognized cause of action under *Bivens*.

Analyzing a plaintiff's *Bivens* claim involves a two-step inquiry.

First, [the Court] asks whether the case presents a new *Bivens* context
–i.e., is it meaningfully different from the three cases in which the Court
has implied a damages action.  Second, if a claim arises in a new
context, a *Bivens* remedy is unavailable if there are "special factors"
indicating that the Judiciary is at least arguably less equipped than
Congress to weigh the costs and benefits of allowing a damages action
to proceed.  If there is even a single reason to pause before applying
*Bivens* in a new context, a court may not recognize a *Bivens* remedy.

*Egbert*, 142 S. Ct. at 1803 (cleaned up).  "[T]hose steps often resolve to a single

question: whether there is any reason to think that Congress might be better

equipped to create a damages remedy."  *Id.*

b.  Conditions of Confinement

Most of Foreman's complaint directed at Hemingway falls under the

umbrella of "conditions of confinement" claims, sometimes also referred to as

10

"failure to protect" claims.  These include Foreman's Fifth and Eighth Amendment claims alleging that Hemingway failed to protect him from the risk and contraction of COVID-19 due to prison policies regarding masks, housing, cleaning and sanitizing supplies, and intake screening.  (ECF No. 1, PageID.11-14, 17-18).

Hemingway cites several federal court decisions that find such claims – prison conditions that allegedly lead to inmates contracting COVID-19 or risked doing so – to be unactionable under *Bivens*.  *See Walker v. United States*, No. 3:21-CV-1881, 2022 WL 1472872, at *4 (M.D. Pa. May 10, 2022) (dismissing Eighth Amendment claim involving a prisoner who contracted COVID-19 because it was meaningfully different from prior *Bivens* actions including *Carlson*, and special factors counseled against extending); *Blakey v. Pistro*, No. 2:21-CV-572-JDW, 2021 WL 1721579, at *2 (E.D. Pa. Apr. 29, 2021) (dismissing claims "based on the conditions in [a prisoner-plaintiff's] cell when he was confined there and on the conditions that led to him catching Covid-19" after determining that such claims were not cognizable under *Bivens*); *Carey v. Von Blanckensee*, 515 F. Supp. 3d 1051, 1057–58 (D. Ariz. 2021), *appeal dismissed*, No. 21-15292, 2021 WL 2026260 (9th Cir. Mar. 11, 2021) (finding no *Bivens* claim for "threat-to-safety" allegation where inmate contracted COVID-19 after testing negative and being housed with an inmate who tested positive); *Hand v. Young*, No. 1:20-cv-00784, 2021 WL 3206833, at *6 (E.D. Cal. July 29, 2021), *report and recommendation*

*adopted*, 2021 WL 5234429 (E.D. Cal. Nov. 10, 2021) (noting that plaintiff's claims sound under "conditions-of-confinement," which is not cognizable under *Bivens*); *Sherrick v. Marindino*, No. 1:21-cv-01506, 2021 WL 5355666, at *3 (W.D. La. Nov. 1, 2021), *report and recommendation adopted*, 2021 WL 5352522 (W.D. La. Nov. 16, 2021) (same); *Mendez v. Kallis*, No. 21-cv-0178, 2021 WL 1795802, at *2 (D. Minn. Mar. 19, 2021), *report and recommendation adopted*, 2021 WL 1400073 (D. Minn. Apr. 14, 2021) (holding that no *Bivens* action is available for "failure-to-protect" claims regarding COVID-19 in prison).

Foreman responds that at least one court, post-*Egbert*, has found that a failure to provide humane conditions of confinement, including "unsafe living conditions during the COVID-19 pandemic," may present a *Bivens* claim within the confines of *Carlson v. Green*. *Rayborn v. USP Marion*, No. 21-cv-01200, 2022 WL 2528246, at *3 (S.D. Ill. July 7, 2022). However, as Hemingway notes, this decision was made during the screening process, and the court explicitly stated that "[t]he issue of whether this claim is now foreclosed . . . can be addressed, with the help of briefing" in a motion to dismiss or for summary judgment by the defendants. *Id*. The same is true of *Lee v. Barr*, No. 20-11898, 2021 WL 2229278, at *3 (E.D. Mich. June 2, 2021), a case from this District in which a plaintiff was allowed to proceed—at the screening stage—against Hemingway under *Bivens* for a conditions-of-confinement claim.

12

The undersigned agrees with the authorities cited by Hemingway.  The claims described above are governed by the Supreme Court's decision in *Ziglar v. Abbasi*, wherein the Court found petitioners' "detention policy claims" regarding their conditions of confinement—which allegedly included detention in cramped housing for 23 hours per day, lights on at all hours, no access to basic hygiene products, no communication with the outside world, and random, frequent strip searches—could not proceed under *Bivens*.  582 U.S. ___, 198 L. Ed. 2d 290, 137 S. Ct. 1843, 1858-1859, 1863 (2017).  The *Ziglar* Court found that these claims presented a new context from the previous cognizable *Bivens* claims, and that under the "special factors" analysis, "[t]he proper balance [between remedies for petitioners and restrictions on the federal governments] is one for the Congress, not the Judiciary, to undertake." *Id.*  As in *Ziglar*, the congressional silence regarding conditions in prisons relating to COVID-19 "is notable because it is likely that high-level policies will attract the attention of Congress." 137 S. Ct. at 1862. "Thus, when Congress fails to provide a damages remedy in circumstances like these, it is much more difficult to believe that congressional inaction was inadvertent."  *Id.* (internal citations and quotation marks omitted).

Thus, the undersigned finds that no *Bivens* action exists for Foreman's "conditions of confinement" claims and recommends their dismissal.

c.      Deliberate Indifference

13

The portion of Foreman's claim against Hemingway that relates to the denial of Foreman's access to rehabilitative therapy and discharge from St. Joseph Hospital back to FCI Milan sounds in deliberate indifference to serious medical needs, and closely tracks the *Bivens* claim approved by the Supreme Court in *Carlson*.

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id*. at 104.

An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Comstock*, 273 F.3d at 702-703 (quoting *Farmer*, 511 U.S. at 834). In *Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from

14

which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

Furthermore, as for any claim under *Bivens*, "vicarious liability is inapplicable . . . a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. at 677. Therefore, Hemingway is correct that "to the extent [Foreman] is attempting to allege that the procedures in place were not adequately enforced or followed by line staff such as guards or medical personnel, those allegations do not state a constitutional claim against Hemingway as warden of the facility." (ECF No. 14, PageID.167).

However, Foreman's claim that Hemingway rejected the doctor's recommendation for 30 days of rehabilitative therapy (ECF No. 1, PageID.10) alleges Hemingway's direct involvement in denying prescribed medical care to meet Foreman's medical needs.  Furthermore, the alleged needs are serious. Foreman describes having been placed on a ventilator for 19 days, being pronounced dead twice, losing 52 pounds, and being returned to a cell immediately afterward where he was locked inside for all but 20 minutes per day.  (*Id*.).  He

15

alleges that this caused him nerve damage, hypertension, and post-traumatic stress disorder resulting in anxiety and inability to sleep. (*Id.*, PageID.16-17).

In *Carlson v. Green*, the Supreme Court authorized a *Bivens* action for an Eighth Amendment claim of deliberate indifference to an inmate's medical needs. In that case, inmate Joseph Jones, Jr., was diagnosed with chronic asthma upon entering the federal-prison system. *Carlson*, 446 U.S. at 16. Prison officials ignored his treating physician's recommendation that he be "transferred to a penitentiary in a more favorable climate," and upon Jones's return to prison, he was denied proper medication and prescribed steroid treatments. (*Id.*, PageID.157-158). After suffering an asthma attack, Jones was treated improperly, which included injection with a contraindicated drug and improper use of a defibrillator before he was rushed to a hospital, where he was pronounced dead on arrival. (*Id.*). The Supreme Court found that his estate's claim was sufficient to survive a motion to dismiss.

Hemingway says that *Carlson* is distinguishable because *Carlson* demonstrated "plain cause-and-effect," whereas here, "there are no allegations that the lack of rehabilitative care damaged plaintiff." (*Id.*, PageID.160). The undersigned disagrees. Foreman does not specifically delineate which of his alleged injuries resulted from the lack of rehab, but this is not necessary for his claim to fall under the purview of *Carlson*, which as noted above, authorizes

claims of deliberate indifference to an inmate's medical needs.  *See also Callahan*

*v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020).

A new context is one that is "meaningfully different from the three cases in

which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803.  This

includes cases involving a "new category of defendants," or where there are

"potential special factors that previous *Bivens* cases did not consider." *Id.* (internal

quotation marks and citations omitted).  Here, Hemingway has not distinguished

the category of defendants or type of action from *Carlson* and has provided no

authority to support a new context based on chronic asthma versus COVID-19 or

the types of harms suffered here from those in *Carlson*.[4]

Foreman has alleged that he had a sufficiently serious medical need, and that

Hemingway, after being informed by the doctor of his recommendation for

rehabilitative therapy, inferred and disregarded the substantial risk to Foreman of

---

[4] Hemingway also argues that there are alternative remedial structures available
under which Foreman can seek relief.  (ECF No. 14, PageID.163).  But this is only
relevant when considering whether to extend *Bivens* to new contexts, which is not
the case with Foreman's deliberate indifference claim.  When proceeding under a
context already recognized by the Supreme Court, additional avenues of relief do
not foreclose a *Bivens* action.  *See Koprowski v. Baker*, 822 F.3d 248, 251–52 (6th
Cir. 2016) ("The Court found that 'the congressional comments accompanying [the
Act] made it crystal clear that Congress views FTCA and *Bivens* as parallel,
complementary causes of action.' " (quoting *Carlson,* 446 U.S. at 19–20)).
Because Foreman proceeds under a recognized *Bivens* context here, the alternative
remedial structures available do not undermine his claim.

17

returning him to an isolated cell without further medical attention.  Thus, Foreman

has properly alleged a deliberate indifference to serious medical needs, and the

Court should allow this *Bivens* claim to proceed at this stage under the context

provided in *Carlson*.

### 2.     Qualified Immunity

Hemingway also argues that he is entitled to qualified immunity from the

claims brought against him by Foreman.

### a.  Standard

Qualified immunity shields government officials performing discretionary

functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to

protect government officials from interference with their official duties, qualified

immunity "is an immunity from suit rather than a mere defense to liability."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It gives officials "breathing room

to make reasonable but mistaken judgments and protects all but the plainly

incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3,

6 (2013) (punctuation modified).  After a defending official initially raises

qualified immunity, the plaintiff bears the burden of showing that the official is not

entitled to qualified immunity.  *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident."  *Id.* at 472.  The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established."  *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

b.    Application

As mentioned above, to the extent that Foreman alleges that Hemingway is liable based on the supervising of others in his position as warden, *see* ECF No. 1, PageID.5-6, this does not give rise to a constitutional violation, and Hemingway is entitled to qualified immunity on these claims.  *See, e.g.*, *Kinlin v. Kline*, 749 F.3d at 577.

Regarding Hemingway's "fail[ure] to protect [Foreman] from the risk and from contraction of an infectious disease" by administering policies and procedures as the warden of FCI Milan, (ECF No. 1, PageID.12), Hemingway contends that the policies and procedures in place at FCI Milan have already been found to pass constitutional muster.

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), the Sixth Circuit confronted a habeas petition alleging deliberate indifference claims under the Eighth Amendment regarding the COVID-19 response at the Federal Correctional Institution in Elkton, Ohio (FCI Elkton).  Due to the health risks of COVID-19 combined with its transmissibility under standard prison conditions, the *Wilson* court found that the objective prong of the deliberate indifference test was "easily satisfied." *Id*. at 840.  As for the subjective prong, the court found that while the defendants were aware of and understood the potential risk of serious harm, they were not deliberately indifferent to that risk. *Id*.  The Sixth Circuit noted that prison officials at FCI Elkton were:

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id*. at 841.

The Sixth Circuit concluded that through these actions, the prison "had responded reasonably to the risk posed by COVID-19 and that the conditions at Elkton cannot be found to violate the Eighth Amendment." *Id*.

Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the [Bureau of Prisons (BOP)] has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844, 114 S. Ct. 1970.   The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton.   Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks.   The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing.   The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id*.   The court noted that its decision was in line with its previous decisions regarding responses to similar risks of harm, as well as sister circuits' conclusions regarding similar responses to COVID-19.   *Id*.

One judge in this district has found that "[t]he steps undertaken by the warden and other prison officials to contain the Covid-19 virus at FCI-Milan are identical to the steps taken by the prison officials at FCI-Elkton which were deemed to pass constitutional muster by the Sixth Circuit."   *Mescall v. Hemingway*, No. 2:20-11110, 2020 WL 4584028, at *5 (E.D. Mich. Aug. 10, 2020), *aff'd,* No. 20-1857, 2021 WL 4025646 (6th Cir. Apr. 7, 2021).   Thus, it can hardly be said that the policies in place at FCI Milan violate clearly established constitutional that a reasonable person would know.   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

21

Likewise, Foreman has not sustained his burden of showing that his rights in this context were clearly established.  He cites *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (considering prisoners' right to a smoke-free environment); *Hutto v. Finney*, 437 U.S. 678, 682–83 (1978) (holding that deliberate indifference was established where conditions of punitive isolation disregarded risk of the spread of infectious diseases such as hepatitis and venereal disease); and *Morales Feliciano v. Rossello Gonzalez*, 13 F. Supp. 2d 151, 210 (D.P.R. 1998) (holding that a failure to screen incoming inmates for infectious diseases including tuberculosis violated the Constitution) to support his claim against qualified immunity.[5]  But the relevance of these principles in the context of the COVID-19 pandemic and our institutions' early responses thereto are tenuous at best.

"Clearly established law is not defined at a high level of generality but must be particularized to the facts of the case."  *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019) (internal quotation marks omitted).  Moreover, "[t]he fact that prison officials were unable to completely eradicate the spread of Covid-19 at FCI-Milan does not demonstrate deliberate indifference to the medical needs of the inmates."  *Mescall*, 2020 WL 4584028, at *5 (citing *Wilson v. Williams*, 961 F.3d at 842-43).  Further, "[Sixth Circuit] precedents do not require that prison officials

---

[5] Foreman also cites *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996), which is inapposite, as this case holds that a prison had a compelling state interest in mandatory tuberculosis testing.

take every possible step to address a serious risk of harm." *Wilson v. Williams*, 961 F.3d at 844.  An "imperfect" response to Covid-19 is "not enough to establish deliberate indifference." *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020).  Thus, Hemingway's application of FCI Milan's established COVID-19 policies do not constitute deliberate indifference.

Additionally, to the extent that the practices at FCI Milan deviated from its stated COVID-19 policies, which were recognized as adequate by the Sixth Circuit, Foreman has failed to allege Hemingway's personal involvement in those deviations.

In sum, even assuming these claims are cognizable under *Bivens*, which as discussed above, the undersigned concludes they are not, Hemingway would be entitled to qualified immunity.

As to Foreman's properly asserted *Bivens* claim—that Hemingway showed deliberate indifference in denying the doctor's recommended rehabilitative therapy—the undersigned finds that Hemingway is not entitled to qualified immunity, at least at this stage of the case.  As discussed above, Foreman has stated a claim based on his denial of rehabilitative treatment following a serious bout of COVID-19 and against his doctor's recommendation.

While Hemingway acknowledges that deliberate indifference "exists when an official intentionally delays or denies access to medical care for a serious

23

medical need," (ECF No. 14, PageID.169 (citing *Phillips v. Roane Cnty., Tenn*., 534 F.3d 531, 539 (6th Cir. 2008)), he nonetheless argues that "the dispute is over the adequacy of the treatment," which is an area where "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law," (*Id*. (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).  Hemingway also cites *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) for the proposition that a disagreement over the adequacy of medical treatment is not deliberate indifference.  But there, the plaintiff "received extensive treatment" for his injuries and "was at no point denied treatment." *Id*.

Here, Foreman clearly alleges that he was denied treatment after being removed from the ventilator and ordered to be discharged from the hospital and back to his cell.  Foreman does not allege a disagreement with his doctor, as is common in these cases, or even a disagreement between doctors.  He alleges that Hemingway, a warden with presumably no medical training, made the decision against Foreman's doctor's recommendation that Foreman was to receive no rehabilitative therapy.  Whether this ultimately constituted a deprivation of Foreman's constitutional rights is not clear, but Foreman has properly alleged that it has.

The Sixth Circuit has held that "a prisoner has a cause of action against prison officials when his reasonable requests for medical treatment are denied and he is thereby exposed to undue suffering or the threat of tangible residual injury." *Kaufman v. Wolfenbarger*, No. 08-13762, 2010 WL 148668, at *5 (E.D. Mich. Jan. 13, 2010) (citing *Westlake*, 537 F.2d at 860). "Furthermore, in 1994, the Supreme Court held that a prisoner may bring a claim against a prison official if the prison official acted deliberately indifferent 'to inmate health and safety.' " *Id.* (quoting *Farmer*, 511 U.S. at 834). It has also been recognized that "[d]eliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment." *Mahan v. Nagy*, No. 2:22-CV-10489, 2022 WL 16727168, at *4 (E.D. Mich. Sept. 26, 2022), *report and recommendation adopted*, 2022 WL 16716216 (E.D. Mich. Nov. 4, 2022) (citing *Farmer*, 511 U.S. at 834; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992)). As such, the undersigned finds that Foreman has alleged a violation of a clearly established constitutional right, and that Hemingway is not entitled to qualified immunity as to this claim.

## VI.   Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Foreman's motion to strike (ECF No. 21) be DENIED and that Hemingway's motion to dismiss (ECF No. 14) be GRANTED IN PART and DENIED IN PART.

25

Foreman's claims against Hemingway relating to the conditions of his confinement at FCI Milan that put him at risk for contracting COVID-19 should be dismissed, and Foreman's claim alleging deliberate indifference to serious medical needs based on Hemingway's denial of rehabilitative therapy should continue.

Dated: November 16, 2022         s/Kimberly G. Altman
Detroit, Michigan                  KIMBERLY G. ALTMAN
                                 United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 16, 2022.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager