UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN P. FOREMAN,

     Plaintiff,

v.

UNITED STATES OF AMERICA,
et al.,

     Defendants.

Case No. 22-10401
Honorable Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

---

## OPINION AND ORDER OVERRULING OBJECTIONS [30, 31], ADOPTING REPORT AND RECOMMENDATION [29], AND GRANTING IN PART DEFENDANT HEMINGWAY'S MOTION TO DISMISS [14]

At the beginning of the COVID-19 pandemic in April 2020, Benjamin Foreman was placed in the segregated housing unit (SHU) at FCI Milan because his cellmate had a fever of over 100 degrees. In the SHU, says Foreman, he was not given masks, gloves, or other protective gear, and was housed with individuals who were not properly screened for COVID-19, though they had recently "self-surrendered."

Soon after his transfer to the SHU, Foreman ran a fever and was transferred to the COVID-19 isolation unit. He says that he asked corrections officer Patton for additional medical attention but was denied. The next day, Foreman's COVID-19 symptoms escalated, and he was eventually found unconscious in his cell. According to Foreman, the nurse practitioner, Weaver, denied him treatment for several hours. But later that same day, he was transferred to the hospital. There, he was placed on

a ventilator for 19 days, lost over 50 pounds, and was pronounced dead twice during his stay.

Almost a month after his COVID-19 symptoms began, Foreman's doctor recommended that Foreman undergo 30 days of rehabilitative therapy. Foreman says that at that time, in addition to his weight loss, he was barely able to walk. But Foreman alleges that he was not provided with 30 days of rehabilitative treatment. Instead, after receiving therapy for one day, Warden Jonathan Hemingway "refused to pay" for further treatment and ordered that Foreman be returned to FCI Milan.

Because he did not receive the recommended rehabilitative treatment, Foreman says he has nerve damage, numbness in his left shoulder, swelling and pain in his right thigh (which he believes is a blood clot), and hypertension.

So Foreman brought suit against Patton, Weaver, Hemingway, and the United States. All pretrial matters were referred to Magistrate Judge Kimberly G. Altman. In time, the United States appeared on behalf of itself and Hemingway. The other two defendants have not yet appeared.

In response to the complaint, Hemingway filed a motion to dismiss. (ECF No. 14.) Magistrate Judge Altman recommended that the motion be granted in part but that Foreman be permitted to proceed with his Eighth Amendment medical-indifference claim against Hemingway. (ECF No. 29.) Foreman and Hemingway both objected to this recommendation, and those objections are now before the Court.

For the following reasons, the Court will overrule Foreman and Hemingway's objections and adopt the recommended disposition.

## I.

When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections de novo; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). "The district court need not provide de novo review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate [judge's] report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II.

Hemingway raises two issues with respect to the Report and Recommendation: whether Foreman may bring a claim for Hemingway's alleged refusal to provide rehabilitative treatment under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and whether Hemingway is entitled to qualified immunity. The Court addresses each in turn.

### A. *Bivens*

Some history on *Bivens* is helpful to situate Hemingway's objection.

"*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18–19

(1980). *Bivens* itself was a Fourth Amendment case, but the Supreme Court recognized a similar cause of action in two other cases: *Davis v. Passman*, 442 U.S. 228 (1979), recognizing a Fifth Amendment Due Process claim for gender discrimination and *Carlson v. Green*, 446 U.S. 14, 100 (1980), recognizing an Eighth Amendment Cruel and Unusual Punishments Clause claim for failure to provide adequate medical treatment. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55 (2017) ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

In recent years, however, the Supreme Court has advised against extending a *Bivens* cause of action beyond what has already been established. So to determine whether a claim is properly brought as a *Bivens* action, a court must follow a two-step process. First, it must determine whether the case before it presents a "new context" from the three cases where the Supreme Court recognized a *Bivens* action. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). A case presents a new context "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court." *Ziglar*, 137 S. Ct. at 1859–60. The Court has also provided certain factors that, while not exhaustive, could indicate that a claim presents a new context. *Id.* If a claim does present a new context, then the court must move on to step two and ask whether there are any "special factors" that counsel against granting an extension. *Hernandez*, 140 S. Ct. at 743. If there are, the Court may not extend *Bivens* to include the claim at hand. *Id.*

Hemingway contends that Foreman's medical-indifference claim is so meaningfully different from the Eighth Amendment cause of action recognized in *Carlson* that it requires *Bivens* to be extended to a new context. Specifically, he points to differences in the "medical conditions, the medical treatments, and the timing of the alleged denials and the harms suffered[.]" (*See* ECF No. 30, PageID.353.) The Court disagrees.

Start with Foreman's allegations. Foreman says that he was admitted to the hospital with COVID-19. (ECF No. 1, PageID.10.) He was placed on a ventilator for 19 days. (*Id.*) Foreman states that his COVID-19 was so serious that he was pronounced dead twice in the hospital's Intensive Care Unit. (*Id.*) About a month later, Foreman's doctor recommended Foreman undergo 30 days of rehabilitative therapy. (*Id.*) This was in part because Foreman had lost 52 pounds while being treated for COVID-19 and could "barely walk[.]" (*Id.*) Foreman says that he never received his doctor-prescribed treatment because Hemingway refused to pay for rehabilitative therapy and ordered that Foreman be released from the hospital. (*Id.*) Foreman says that at the time of his release, he was in a wheelchair and instead of receiving medical care, he was "placed in a dirty one-man cell where he was helpless, thus, locked in the cell for 23 hours and 40 minutes a day." (*Id.*) A couple of weeks later, Foreman was placed back in his unit in general population. (ECF No. 1, PageID.30.) Foreman says that as a result of not receiving rehabilitative care, he suffered nerve damage and numbness in his left shoulder, numbness, swelling, and

pain in his right thigh (which he believes is a blood clot), and hypertension. (*Id.* at PageID.31.)

In other words, Foreman alleges that Hemingway was deliberately indifferent to his serious need for rehabilitative therapy, which was presumably necessary to regain use of his muscles after spending 19 days on a ventilator and losing a significant amount of weight.

Under the law of this Circuit, this is not a meaningfully different claim than the one *Carlson* recognized. Indeed, even after the Supreme Court's decision in *Egbert*, the Sixth Circuit has twice described the claim recognized in *Carlson* as a claim alleging deliberate indifference to a prisoner's medical needs under the Eighth Amendment. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 867–68 (6th Cir. 2022) (stating that *Carlson* created "a claim of deliberate indifference to a prisoner's medical needs brought against federal prison officials under the Eighth Amendment"); *see also Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *3 (6th Cir. Sept. 13, 2022) ("*Bivens* claims are currently limited to three situations: 1) a Fourth Amendment claim against federal narcotics agents for an illegal seizure, 2) a Fifth Amendment claim against a member of Congress for sex discrimination, and 3) an Eighth Amendment claim against prison officials for inadequate medical care."). Other circuits have also indicated that *Egbert* did not disrupt the viability of a medical-indifference claim under *Carlson*. *See Montalban v. Samuels*, No. 21-11431, 2022 WL 4362800, at *3 (11th Cir. Sept. 21, 2022) (finding that the Supreme Court "has also recognized a *Bivens* action for deliberate indifference to serious

medical needs under the Eighth Amendment"); *Hampton v. Jones*, No. 21-2880, 2022 WL 4820355, at *3 (3d Cir. Oct. 3, 2022) ("To the extent Hampton also alleged an Eighth Amendment claim of deliberate indifference to his serious medical needs against defendant Ayers, courts have long recognized a *Bivens* cause of action in this context."); *Alsop v. Fed. Bureau of Prisons*, No. 22-1933, 2022 WL 16734497, at *2–3 (3d Cir. Nov. 7, 2022). Foreman's claim squarely falls within these descriptions of *Carlson*.

This authority alone provides sufficient support for finding that Foreman's claim is cognizable under *Carlson*. Foreman brings an Eighth Amendment claim for deliberate indifference to a serious medical need against federal prison officials, which is the exact cause of action recognized by the Supreme Court in *Carlson*. And when considering whether such claims present a new context, circuit case law issued after *Egbert* does not engage in an analysis at the level of granularity that is necessary to reach the same conclusion Hemingway does. (*See* ECF No. 30, PageID.353 (arguing that the "medical conditions, the medical treatments, and the timing of the alleged denials and the harms suffered here all differ from Carlson.").) So there is sufficient support in the case law to find that Foreman's claim falls squarely within the scope of *Carlson*.

But even if the Court were to compare Foreman's claim to *Carlson* in the way Hemingway argues, it would still not be persuaded that it is meaningfully different. Both Foreman and the plaintiff in *Carlson* were incarcerated in federal prisons and brought suit against the warden of those facilities. *See Green v. Carlson*, 581 F.2d

669, 676 (7th Cir. 1978). Both plaintiffs alleged that they were hospitalized for their conditions. *Id.*; (ECF No. 1, PageID.10). And, perhaps most significantly, both Foreman and the plaintiff in *Carlson* alleged that the defendants went against their doctor's orders and denied them the recommended treatment. *See Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978) ("Despite the recommendation of the treating physician at St. Anthony's that he be transferred to a penitentiary in a more favorable climate, Jones was returned to the Terre Haute prison. There he was not given proper medication and did not receive the steroid treatments ordered by the physicians at St. Anthony's.").

The Court recognizes there are some differences between Foreman's claim and the claim in *Carlson*, but none are meaningful. True, COVID-19 is a novel disease in many ways compared to a disease like asthma. But Foreman's medical-indifference claim is not about treating COVID-19. It is about receiving less than the doctor-recommended rehabilitative treatment in his recovery from COVID-19. So the novelty of the disease has little to do with his claim; prison officials were told how to treat Foreman—they just ignored the recommendation. And though Foreman fortunately did not suffer the same extent of injury as the plaintiff in *Carlson*, the Court does not see why this would change whether he should be allowed a cause of action for money damages. Indeed, the Sixth Circuit has recognized that *Carlson* provides a cause of action for a medical-indifference claim that did not result in death. *See Koprowski v. Baker*, 822 F.3d 248, 252–58 (6th Cir. 2016) ("Although some of *Carlson*'s analytical framework has been altered by later decisions, its core holding

allowing just this sort of suit binds us."). So given the vast similarities, Hemingway has failed to persuade the Court that differences in the exact illness and in the extent of injury are "meaningful" such that Foreman's claim presents a new context from *Carlson*.

Resisting this conclusion, Hemingway also objects to the Report and Recommendation because it did not reach step two of the *Bivens* analysis—whether there are "special factors" that counsel against extending the *Bivens* action. The Report's approach is understandable as the Supreme Court has described the "special factors" analysis as a step that is taken only after the Court determines that the claim presents a "new context." *See Egbert v. Boule*, 142 S. Ct. 1793, 1803–04 (2022) ("Second, *if a claim arises in a new context*, a *Bivens* remedy is unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." (emphasis added)); *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("When we find that a claim arises in a new context, we proceed to the second step and ask whether there are any special factors [that] counsel[l] hesitation about granting the extension.").

The Court recognizes, however, that in *Egbert*, the Supreme Court merged the two-step process into a one-question analysis. 142 S. Ct. at 1803. In doing so, the Court clarified that "a new context arises when there are potential special factors that previous *Bivens* cases did not consider." *Id.* at 1803–04. So the Court will address

9

the "special factors" that Hemingway relies on to show that Foreman's claim presents a new context.

Hemingway points to the availability of the Administrative Remedy Program (ARP) as a special factor. The availability of alternative remedies is a special factor that could caution hesitation in allowing a *Bivens* action. *Egbert*, 142 S. Ct. at 1806. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807. But the opposite may occur if the Court does not allow a *Bivens* remedy here. *Carlson* has been the law of the land since 1980. In 1995, Congress enacted the Prison Litigation Reform Act. And though perhaps, as Hemingway points out, a purpose of that Act was to limit litigation brought by incarcerated persons, that Act did not purport to eliminate or amend the cause of action provided by *Carlson*. Instead, the PLRA requires exhaustion, which for claims brought against federal officials means satisfying the ARP. So it appears that the remedial process that Congress found "sufficient to secure an adequate level of deterrence" was a two-step process where an incarcerated person first satisfies the ARP and then brings a *Carlson*-type claim in federal court. Nothing in Congress' actions seems to suggest that the ARP was meant to replace the cause of action found in *Carlson*. And the history of PLRA litigation teaches that administrative remedies alone are not sufficient to address medical indifference by prison officials. In other words, *Carlson* is a part of the "calibration" that Congress struck, and the Court will not disrupt that.

10

Hemingway also states that the Federal Tort Claims Act is an available alternative remedy. But the *Carlson* court already considered the FTCA as an alternative remedy, so that is not a "special factor[] that previous *Bivens* cases did not consider." *Egbert*, 142 S. Ct. at 1803; *see also Carlson v. Green*, 446 U.S. 14, 23, (1980) ("Plainly FTCA is not a sufficient protector of the citizens' constitutional rights, and without a clear congressional mandate we cannot hold that Congress relegated respondent exclusively to the FTCA remedy.").

Lastly, Hemingway resorts to the government's internal processes for reporting "waste, fraud, abuse, and corruption" and policies that "evaluate and improve health care delivery systems and clinical outcomes" as sources of alternative remedies. (ECF No. 30, PageID.359.) But it is not clear that Foreman's medical-indifference claim amounts to "waste, fraud, abuse, and corruption" such that an employee would be disciplined for it via internal processes. And policies that are geared toward ensuring a certain level of healthcare in prisons cannot be described as "deterring the unconstitutional acts of individual officers[.]" *See Egbert*, 142 S. Ct. at 1806.

Next, Hemingway invokes another "special factor"—Congress' extensive legislation regarding the rights of incarcerated people. Hemingway argues that despite Congress' actions in this area, it "has never created the remedy that Plaintiff now seeks." (ECF No. 30, PageID.360.) As explained, however, Congress' "silence" here does not suggest "an intent not to create such a remedy." (*Id.*) Rather, Congress has legislated in this area with the backdrop of *Carlson* and the cause of action it

provides. So Congress' silence does not have the same implication as it may have had if no such *Bivens* action already existed. And given the exhaustion requirement in the PLRA, it seems equally, if not more, likely that Congress considered *Carlson* as it legislated in this area.

And Hemingway's argument that authorizing Foreman's *Bivens* claim would burden BOP operations also fails to persuade. As the Court has explained, Foreman's claim squarely falls within the cause of action provided in *Carlson*. And courts around the country have allowed Eighth Amendment medical-indifference claims to proceed under *Carlson* even with the benefit of the *Egbert* opinion. *See Baldwin v. Hutson*, No. 6:19-CV-151, 2022 WL 4715551, at *2 (E.D. Ky. Sept. 30, 2022) ("*Carlson* recognized an Eighth Amendment *Bivens* claim specifically for an *Estelle v. Gamble* deliberate indifference scenario."); *Hammack v. Schneider*, No. 19-CV-00230, 2023 WL 143312, at *3 (S.D. Ill. Jan. 10, 2023) (allowing case to proceed to trial where "[t]he instant case presents virtually the same context as *Carlson*. Both cases involve an Eighth Amendment claim arising from the denial of medical care in a prison setting."); *Dinkins v. United States*, 2022 WL 16735362, at *6 (C.D. Cal. Aug. 19, 2022), report and recommendation adopted, No. 221CV08942, 2022 WL 15525746 (C.D. Cal. Oct. 27, 2022) ("Plaintiff's Eighth Amendment claim based on prison officials' alleged failure to provide him with proper medical care for his sinus blockage does not arise in a new context."); *Mendoza v. Edge*, No. 20CV3032, 2022 WL 3097377, at *5 (E.D.N.Y. July 13, 2022) ("Unlike the plaintiff's allegations about the conditions of his incarceration, his claim that the defendants were deliberately indifferent to his

health bears an extremely strong resemblance to the Eighth Amendment deliberate indifference claim at issue in *Carlson*."); *Mays v. Fed. Bureau of Prisons*, No. 2:22CV00167, 2022 WL 16817623, at *3 (E.D. Ark. Nov. 8, 2022) ("A plaintiff may pursue a deliberate indifference to serious medical needs claim in an *Bivens* action."); *Murray v. Carlton*, No. 5:21-CV-424, 2022 WL 17960685, at *3 (M.D. Fla. Dec. 27, 2022). So whatever the "systemwide consequences of recognizing" Foreman's cause of action are, it appears that those consequences are the status quo. *Egbert*, 142 S. Ct. at 1803. Thus, there is no "uncertainty . . . that foreclose[s] relief." *Id.* at 1804.

In sum, even when considering special factors, the Court finds that Foreman's claim alleging Hemingway was deliberately indifferent to his serious medical needs does not present a new context from *Carlson*. Thus, Foreman was appropriately afforded a cause of action for this claim.

## B. Qualified Immunity

In the alternative, Hemingway argues that even if a *Bivens* cause of action exists, he is entitled to qualified immunity.

For qualified immunity to be denied to a defendant, a plaintiff must show "(1) that government officials violated a constitutional right, and (2) that the unconstitutionality of their conduct was clearly established when they acted." *Murray v. Dep't of Corr.*, 29 F.4th 779, 786 (6th Cir. 2022). Hemingway challenges the Magistrate Judge's recommendation on both prongs, so the Court addresses each.

## 1. Constitutional Violation

"An Eighth Amendment claim," like the one Foreman alleges against Hemingway, "has both an objective and a subjective component." *Richmond v. Huq*, 885 F.3d 928, 937–38 (6th Cir. 2018).

To satisfy the objective component, Foreman must show that he had a serious medical need. *See Murray v. Dep't of Corrections*, 29 F.4th 779, 786 (6th Cir. 2022). But how a plaintiff shows a serious medical need depends on the facts of the claim at hand. As the Sixth Circuit explained in *Rhinehart*, "when an [incarcerated person] ha[s] a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment so cursory as to amount to no treatment at all[.]" *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). But where an incarcerated individual "has received on-going treatment for his condition and claims that this treatment was inadequate," he must place "verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment." *Id.* at 738 (citing *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)). But the Sixth Circuit has clarified that "*Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004).

Hemingway contends that Foreman's claim falls into the latter category, and thus fails because he has not satisfied *Napier*'s requirement of placing "verifying

medical evidence in the record" to establish the detrimental effect of his inadequate treatment. But whether Foreman's claim falls into the first category or the second is a matter of framing. Hemingway reads Foreman's complaint as one where COVID-19 is the serious medical need. So, according to Hemingway, since Foreman received treatment for COVID-19, his complaint that he did not receive rehabilitative treatment amounts to a claim that his treatment for COVID-19 was inadequate.

The Court understands it differently, however, given that it must read the complaint in the light most favorable to Foreman. Foreman alleged that the doctor recommended that he receive rehabilitative care for 30 days following his treatment for COVID-19, presumably so Foreman could regain muscle mass, mobility, and strength after being bedridden for so long. Indeed, Foreman states he "could barely walk" and was in a wheelchair when he returned to Milan from the hospital. (ECF No. 1, PageID.10.) So the medical need at issue was not COVID-19, but rather Foreman's loss of muscle mass and usage caused by the treatment he needed for COVID-19. Foreman also alleges that he received one day of this 30-day prescribed treatment before Hemingway ordered that he receive no more. Such allegations could amount to the first category—a medical need diagnosed by a physician for which the prison plausibly provided "cursory" treatment that amounted to no treatment at all. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). In other words, even though he received extensive treatment for COVID-19, Foreman plausibly received little to no treatment for the physical infirmities that he developed as a result of not using

his body while he was on a ventilator. So the Court does not find that the *Napier* standard forecloses Foreman's claim.

The Sixth Circuit's more-recent descriptions of what a "serious medical need" entails further supports this understanding. *See Young v. Campbell Cnty., Ky.*, 846 F. App'x 314, 325 (6th Cir. 2021) ("To establish a sufficiently serious medical need, a plaintiff must point to a medical need 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008))); *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 567 (6th Cir. 2020) (same). Under these tests, Foreman has plausibly pled the objective prong, as he alleges that the hospital doctor recommended 30 days of rehabilitative treatment.

And this conclusion aligns with the Sixth Circuit's description of when the *Napier* standard applies. The Sixth Circuit has stated that when "doctors provide some care and prisoners challenge their treatment choices as inadequate," then "prisoners must show more." *Phillips v. Tangilag*, 14 F.4th 524, 534–35 (6th Cir. 2021). Foreman's complaint is not a disagreement with a "treatment choice," however. Rather, he complains that prison officials ignored the doctor's "treatment choice" for non-medical reasons. So the Court finds that Foreman has plausibly alleged the objective prong of a medical-indifference claim by "showing that a doctor has diagnosed a condition as requiring treatment[.]" *Id.* at 534.

Turning to the subjective component, "the plaintiff is required to show that 'the official knew of and disregarded an excessive risk to inmate health or safety.'" *Richmond*, 885 F.3d at 939 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))

Hemingway contends that Foreman's allegation that he refused to pay for Foreman's recommended treatment is insufficient to show deliberate indifference.

The Court recognizes that Foreman does not provide much in the way of allegations showing Hemingway's state of mind. But the Court finds that the plausible inference from what Foreman has pled is that Hemingway was made aware of the physician's planned treatment but ignored it. "If an official fails to adhere to a prescribed course of treatment, the official's actions may satisfy the subjective component of an Eighth Amendment violation." *Murray*, 29 F.4th at 786–87 (internal citations omitted). Indeed, in *Murray*, the Sixth Circuit found the defendant was not entitled to qualified immunity where the plaintiff "asserts that Dr. Heyd failed to adhere to Murray's treatment plan that was established by the Ohio State University hematology-consult team." 29 F.4th at 789. So the Court finds that, at this stage at least, Foreman has plausibly alleged that Hemingway was aware of his serious medical need but failed to provide him treatment.

Hemingway argues that Foreman only alleges that the doctor told Foreman about the recommended course of treatment, and not that the doctor told Hemingway. While true, the Court will not require such precise pleadings. A plausible inference from Foreman's allegations that Hemingway "refused to pay" for the treatment is that Hemingway was aware of the recommended treatment. (ECF No. 1, PageID.10.)

17

And by refusing to authorize such treatment, it is plausible that Hemingway knew that Foreman was not receiving treatment for his inability to walk. Though the precise contours of what Hemingway knew when he made such a decision is not known, the Court finds that Hemingway has plausibly alleged Hemingway acted with deliberate indifference in denying him treatment.

In sum, Foreman has plausibly pled a constitutional violation.

## 2. Clearly Established Law

Hemingway also contends that he is entitled to qualified immunity because Foreman has not identified clearly established law that would have put Hemingway on notice that his conduct was unconstitutional.

Hemingway's argument, however, is contrary to Sixth Circuit law. For starters, Hemingway argues that the precedent relied on in the Report and Recommendation is not specific enough to Foreman's claim. Hemingway states that "the R&R then fails to cite any Sixth Circuit or published district court opinions holding that withholding additional rehabilitative therapy violates the Constitution." (ECF No. 30, PageID.369.)

The Sixth Circuit has recently found, however, that "[c]ourts have frequently rejected officials' contentions that a 'legal duty need . . . be litigated and then established disease by disease or injury by injury' in the context of Eighth Amendment claims." *Murray v. Dep't of Corr.*, 29 F.4th 779, 790 (6th Cir. 2022) (internal citations omitted); *see Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1097 (6th Cir. 2019) ("[T]he Supreme Court 'does not require a case directly on point if existing

18

precedent has placed the statutory or constitutional question beyond debate.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011))).

Considering that standard, it is well-established in this Circuit that an incarcerated individual has a "right to adherence to a treatment plan." *Murray*, 29 F.4th 779, 791 (6th Cir. 2022). Hemingway expresses skepticism that this right was clearly established, arguing that the cases the Report and Recommendation relied on did not involve such a right. But in *Murray*, the plaintiff complained that the defendant doctor failed to adhere to the plan prescribed by hematologists. 29 F.4th 779, 791. And *Murray* was not the first time the Sixth Circuit has articulated such a right. Indeed, in *Richmond v. Huq*, the Sixth Circuit reversed a grant of summary judgment on qualified immunity and stated that "this Circuit's precedent is clear that neglecting a prisoner's medical need and interrupting a prescribed plan of treatment can constitute a constitutional violation." 885 F.3d at 947–48 (citing *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 844–45 (6th Cir. 2002); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991)). So contrary to Hemingway's assertions, there was plenty of authority in 2020 (when Hemingway allegedly denied Foreman treatment) that established that failing to adhere to a prescribed treatment plan can be a constitutional violation. Thus, Hemingway plausibly had notice that his alleged conduct was unconstitutional, so his objection is overruled.

### III.

That leaves Foreman's objection. The Court finds that his failure-to-protect claim is an improper extension of *Bivens*.

Foreman objects to the Magistrate Judge's recommendation that his claim against Hemingway for "failure to protect him from the risk and from contraction of an infectious disease (COVID-19 Virus)" be dismissed. (ECF No. 31, PageID.375.) Foreman argues that this claim should be considered a medical-indifference claim, rather than a conditions-of-confinement claim, and thus, is an already-recognized application of *Bivens*. (*Id.*)

Foreman's characterization of his claim regarding protection against COVID-19 is flawed. For starters, one basic element of a medical-indifference claim is that Foreman demonstrate he had a "serious medical need." The Sixth Circuit has defined a serious medical need as one that "a doctor has diagnosed . . . as requiring treatment" or a need that is so "obvious" that "any layperson would agree [that it] necessitates care." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). Yet, Foreman does not allege he had any serious medical need at the time he was denied protection. This claim stems from events that occurred before Foreman contracted COVID-19. And Foreman suggests that he could have been protected from COVID-19 with a mask, gloves, or cleaning supplies, or by more robust screening procedures. (ECF No. 1, PageID.13.) None of these things constitute medical treatment or attention from a doctor. So Foreman's claim cannot be one for medical indifference as he fails to satisfy the basic premise of such a claim—a serious medical need.

20

Even accepting Foreman's argument as true, the Court finds that such a claim presents a new context and declines to extend a *Bivens* cause of action here. Foreman's claim that he was exposed to COVID-19 due to a lack of protective gear and screening at Milan has little in common with the cause of action recognized in *Carlson v. Green*, 446 U.S. 14, 18 (1980). There, the plaintiff already suffered from a medical condition and prison officials failed to follow doctor recommendations or to administer medical treatment to the plaintiff. *Id.* at 17 n.1. Here, Foreman did not yet suffer from a serious medical condition, and he had not yet sought any medical treatment. So his claim differs from *Carlson* in the most fundamental ways.

And this Court is not the first to find that a *Bivens* cause of action does not reach so far as to cover this type of claim. *See, e.g.*, *Springer v. United States*, No. 21-11248, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022) ("This is a new context. To be sure, Springer asserts an Eighth Amendment claim, for which the Supreme Court authorized a *Bivens* remedy in *Carlson*. But *Carlson* involved a deliberate indifference to medical needs claim, whereas Springer's claim is essentially for failure to provide a safe working environment (condition of confinement claim)."); *Schwarz v. Meinberg*, 761 F. App'x 732, 734 (9th Cir. 2019) ("Schwarz's Eighth Amendment claim regarding unsanitary cell conditions presents a new *Bivens* context because Schwarz does not allege a failure to treat a serious medical condition, which was the issue in *Carlson*."); *Carey v. Von Blanckensee*, 515 F. Supp. 3d 1051, 1058–59 (D. Ariz. 2021) (declining to extend *Bivens* to plaintiff's challenge to a federal facility's COVID-19 policies); *Greer v. Caravajal*, No. 522CV00334, 2022 WL 4826513, at *6 (C.D. Cal.

June 30, 2022) ("Plaintiff's first claim regarding COVID-19 prison conditions, however, arises in a new *Bivens* context as it involves a different Eighth Amendment claim than *Carlson*."); *Skyberg v. Marske*, No. 22-CV-591-JDP, 2022 WL 16715463, at *2 (W.D. Wis. Nov. 4, 2022) ("[G]enerally courts have declined to expand the scope of *Bivens* actions into the new context of federal prisons' COVID-mitigation policies not directly related to medical treatment.").

In all, the Court is not persuaded that Foreman's claim that the prison failed to protect him from COVID-19 is truly a medical-indifference claim or that it does not present a new context for a *Bivens* action. So his objection will be overruled and the claim will be dismissed as against Hemingway.

## IV.

In sum, Foreman does not have a *Bivens* action for his claim that Hemingway failed to protect him from contracting COVID-19. However, Foreman does have a plausible *Bivens* action for his claim that Hemingway denied him doctor-prescribed rehabilitative therapy, and Hemingway is not entitled to qualified immunity on that claim at this stage.

Thus, Foreman and Hemingway's objections are overruled and the recommended disposition is adopted. Hemingway's motion to dismiss (ECF No. 14) is GRANTED IN PART.

SO ORDERED.

Dated: February 14, 2023

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE