UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN P. FOREMAN,

    Plaintiff,

v.

UNITED STATES OF AMERICA,
JONATHAN HEMINGWAY,
UNKNOWN MEDICAL STAFF,
NP WEAVER, and OFFICER
PATTON,

    Defendants.
_____/

Case No. 2:22-cv-10401
District Judge Laurie J. Michelson
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT SARAH WEAVER'S MOTION TO DISMISS (ECF No. 44)**[1]

I.    Introduction

This is a civil rights case. Plaintiff Benjamin P. Foreman (Foreman), proceeding *pro se*, filed a complaint naming the United States of America (the Government), Warden Jonathan Hemingway (Hemingway), NP (Nurse Practitioner) Sarah Weaver (Weaver), Officer Patton (Patton), and unknown

---

[1] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

medical staff as defendants.² He asserts claims against the individual defendants under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and against the Government under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (FTCA), alleging that defendants violated his rights while he was incarcerated at the Federal Correctional Institution in Milan, Michigan (FCI Milan). *See* ECF No. 1. Foreman was released from FCI Milan on August 10, 2020. *Id.*³ Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 10).

Before the Court is Weaver's motion to dismiss, (ECF No. 44), which is fully briefed, (ECF Nos. 56, 63, 64). For the reasons that follow, the undersigned RECOMMENDS that Weaver's motion be GRANTED. Specifically, while Foreman's claims against Weaver fall under the *Bivens* umbrella, he does not state a viable constitutional claim for deliberate indifference to his serious medical

---

² Counsel has appeared on behalf of the Government, Hemingway, and Weaver. Patton, however, does not appear to have been properly served, (ECF No. 28), and counsel for the Government has filed a statement indicating that FCI Milan has no record of an Officer Patton at its facility (ECF No. 17). Additionally, Foreman has yet to identify any of the unknown medical staff he named as defendants. The status of Patton and the unknown medical staff will be the subject of a future order. Further, the Government and Hemingway have recently filed motions for summary judgment, (ECF Nos. 81, 83), which will be the subject of a future Report and Recommendation after they are fully briefed.

³ This was verified by the undersigned by searching Foreman's name on https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited October 31, 2023).

needs and as such, Weaver is entitled to qualified immunity.

## II. Statement of Facts

The following facts regarding Weaver are gleaned from the complaint, which is taken to be true for the purposes of this Report and Recommendation (R&R). *See Meyers v. Cincinnati Bd. of Ed.*, 983 F.3d 873, 879 (6th Cir. 2020).

Foreman was housed at FCI Milan during all relevant times, other than his hospitalization at St. Joseph Hospital from April 10, 2020 to May 1, 2020. (ECF No. 1, PageID.8). Foreman states that on April 6, 2020, he was unnecessarily transferred to a special housing unit after a temperature check revealed that his temperature was below 100 degrees. (*Id.*). The next day, his temperature rose above 100 degrees, and he was transferred from the special housing unit to a COVID-19 isolation unit. (*Id.*, PageID.8-9).

On April 9, 2020, Foreman began suffering from dehydration after working out that day, and Weaver treated him with intravenous (IV) fluids. (*Id.*, PageID.9). Weaver left Patton in charge of Foreman upon departing, but that night Patton ignored all of Foreman's requests for medical care or treatment. (*Id.*). Patton denied Weaver informing him to keep an eye on Foreman or apprising him of Foreman's condition. (*Id.*). The next morning, Weaver found Foreman unconscious in his cell. (*Id.*). Weaver failed to provide immediate medical treatment, but Foreman was eventually sent to the hospital later that day, where he

was diagnosed with COVID-19 and placed on a ventilator for 19 days. (*Id.*, PageID.9-10). While on the ventilator, Foreman lost 52 pounds and was pronounced dead twice. (*Id.*, PageID.10). Despite the severity of the illness, Foreman eventually recovered. (*Id.*, PageID.10).

Foreman asserts that Weaver violated his Fifth and Eighth Amendment rights by:

- Treating his dehydration with IV fluids instead of providing six to eight bottles of water;
- Failing to appraise officer Patton of Foreman's condition upon leaving Foreman under Patton's watch; and,
- Spending forty-five minutes to an hour preparing a written report instead of providing Foreman with immediate medical attention upon finding him passed out in his cell.

(*Id.*, PageID.15).

### III.   Parties' Arguments

Weaver argues that Foreman failed to properly serve Weaver for more than a year after filing his complaint; that his claims are now time-barred as he failed to serve her within the three-year statute of limitations for *Bivens* claims; that the claims against her are not cognizable under *Bivens*; and that she is entitled to qualified immunity on all claims. (ECF No. 44, PageID.486). Foreman says that Weaver was properly served by mail on April 14, 2022, and that in an abundance of caution, he attempted personal service after that date but Weaver avoided it. (ECF No. 56, PageID.604-605). He also argues that his Fifth and Eighth

Amendment claims are cognizable under *Bivens* and that they are well-settled violations of clearly established federal law, such that Weaver is not entitled to qualified immunity. (*Id.*, PageID.607-620).

IV. Standard for Motions to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

5

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting R&R of Binder, M.J.).

## V. Discussion

For the reasons below, the undersigned finds that while Foreman's claims are cognizable under *Bivens*, they do not rise to the level of constitutional violations. Therefore, Weaver is entitled to qualified immunity. In light of this determination, the undersigned need not reach the issues of service or the statute of limitations.

### A. *Bivens* Liability

Weaver dedicates much of her brief to arguing that Foreman's complaint presents new contexts under *Bivens* and that "special factors" caution against extending *Bivens* remedies to these new contexts. However, in adopting the

6

undersigned's R&R finding that Foreman had stated a *Bivens* claim against Hemingway, District Judge Laurie J. Michelson found that in this Circuit, an Eighth Amendment claim against prison officials for inadequate medical care was cognizable under *Bivens*.

> Indeed, even after the Supreme Court's decision in *Egbert* [*v. Boule*, 596 U.S. 482 (2022)], the Sixth Circuit has twice described the claim recognized in *Carlson* [*v. Green*, 446 U.S. 14 (1980)] as a claim alleging deliberate indifference to a prisoner's medical needs under the Eighth Amendment. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 867–68 (6th Cir. 2022) (stating that *Carlson* created "a claim of deliberate indifference to a prisoner's medical needs brought against federal prison officials under the Eighth Amendment"); *see also Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *3 (6th Cir. Sept. 13, 2022) ("*Bivens* claims are currently limited to three situations: 1) a Fourth Amendment claim against federal narcotics agents for an illegal seizure, 2) a Fifth Amendment claim against a member of Congress for sex discrimination, and 3) an Eighth Amendment claim against prison officials for inadequate medical care.").
>
> ***
>
> Foreman's claim squarely falls within these descriptions of *Carlson*.
>
> This authority alone provides sufficient support for finding that Foreman's claim is cognizable under *Carlson*.

(ECF No. 38, PageID.440-441).

Thus, it is the law of the case that Foreman's claim against Weaver, which boils down to an Eighth Amendment claim for deliberate indifference to a serious medical need against a federal prison official, sounds under *Bivens*. See *Musacchio v. United States*, 577 U.S. 237, 244-45 (2016) (The law-of-the-case

7

doctrine "provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (internal quotation marks and citation omitted)). The undersigned will therefore consider whether Foreman's claims against Weaver meet the deliberate indifference standard under the Eighth Amendment and whether Weaver was alleged to have violated clearly established constitutional law. In other words, whether Weaver is entitled to qualified immunity.

B. Qualified Immunity

Weaver argues that she is entitled to qualified immunity because Foreman has failed to allege facts giving rise to a constitutional violation and because she did not violate any of Foreman's clearly established rights. These arguments will be considered in turn below.

1. Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Created to protect government officials from interference with their official duties, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room

8

to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified). After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id*. at 472. The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

2. Constitutional Violation

a. Deliberate Indifference Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v.*

9

*McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 702-03 (quoting *Farmer*, 511 U.S. at 834). In *Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

b. Application

As summarized above, Foreman's claims against Weaver entail:

- Treating his dehydration with IV fluids instead of providing six to eight bottles of water;
- Failing to appraise officer Patton of Foreman's condition upon leaving Foreman under Patton's watch; and,
- Spending forty-five minutes to an hour preparing a written report instead of providing Foreman with immediate medical attention upon finding him passed out in his cell.

(ECF No. 1, PageID.15).

Regarding Weaver's treatment of Foreman's dehydration, Foreman fails to state a viable claim of deliberate indifference. "When 'a doctor orders treatment

10

consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted.' " *Rhinehart v. Scutt*, 894 F.3d 721, 743 (6th Cir. 2018) (citing *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006)). "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Here, where Foreman contends that he should have been "provided with six to eight bottles of water as this ordinarily is how you may treat dehydration," he has pled no more than a dispute over the adequacy of his treatment.

In his response, Foreman contends that Weaver had no authority to treat him independently as a nurse practitioner, was incompetent to examine him, and misdiagnosed him by not determining that he had COVID-19 at that time. (ECF No. 56, PageID.615-616). However, Weaver's authority to treat Foreman was not part of the complaint, nor does the allegation state a claim against Weaver as she would not have been in a position to remedy that situation. Thus, these allegations need not be considered. *See Lippett v. Duncan*, No. 21-CV-11289, 2022 WL

11

19518459, at *4 (E.D. Mich. Dec. 21, 2022), *R&R adopted in relevant part*, 2023 WL 2555547 (E.D. Mich. Mar. 17, 2023) ("Parties cannot add pleadings through arguments in their response brief."). Further, any misdiagnosis would have been the result of "negligence, inadvertence, or good faith error," which are not actionable, and Foreman does not allege otherwise. *Reilly v. Vadlamudi*, 680 F.3d at 624. Thus, his first claim fails to rise to the level of deliberate indifference.

Next, Foreman alleges that Weaver did not inform officer Patton of his condition upon leaving. This resulted in Foreman being untreated overnight, leading to Weaver finding him passed out in his cell at 6:00 a.m. the next morning. (ECF No. 1, PageID.9). This allegation fails to meet the subjective requirement of deliberate indifference. There is no allegation that Weaver knew Foreman's condition was worse than perceived; in fact, the pleadings suggest that Weaver misdiagnosed Foreman with dehydration rather than COVID-19. Even assuming Foreman's medical need was obvious, it is not enough to allege obviousness; the risk must be known to satisfy the subjective element. *See Farmer*, 511 U.S. at 841-842 ("For these reasons, we cannot accept petitioner's argument that . . . a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it."). Therefore, this claim also fails the deliberate indifference test.

Finally, Foreman alleges that Weaver found him passed out in his cell the next morning and took forty-five minutes to an hour to write a report before ensuring that he was treated. (*Id.*, PageID.9-10). Weaver says that a delay in medical care only violates the Eighth Amendment if it *results* in substantial harm. (ECF No. 44, PageID.508 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). However, the Sixth Circuit recognizes that the standard requires only a "*substantial risk* of serious harm," and "does not require actual harm to be suffered." *Blackmore*, 390 F.3d at 899. Nevertheless, a substantial risk of serious harm must still be alleged.

Foreman does not allege that the forty-five minute to one hour delay resulted in any serious harm, and he fails to specifically allege any serious harm of which he was at substantial risk.[4] He was ultimately transferred to St. Joseph Hospital where he was diagnosed and treated for COVID-19. On the face of the complaint, the harms he alleges resulted from being exposed to COVID-19 at FCI Milan and being denied further prescribed treatment from Hemingway. While Foreman's

---

[4] Foreman states that "Defendants knew of and disregarded an excessive risk to Mr. Foreman's health, by failing to take reasonable measures to provide him with access to proper medical attention and/or delayed such medical attention and [were] the direct or indirect cause of Plaintiff's contraction of an infectious disease[.]" (ECF No. 1, PageID.10-11). But such vague and conclusory allegations are insufficient to state a civil rights claim against prison officials under § 1983. *See Baytops v. Morrison*, No. 2:20-CV-12786, 2020 WL 6316812, at *3 (E.D. Mich. Oct. 28, 2020); *Yoder v. Stevenson*, No. 2:20-CV-12992, 2021 WL 120936, at *3 (E.D. Mich. Jan. 13, 2021).

13

conditions of confinement claim against Hemingway was dismissed, his claim for denial of treatment survived a motion to dismiss. (ECF No. 38). But Weaver did not take part in either of these alleged deprivations. Therefore, Foreman's claims against Weaver fail to rise to the level of constitutional violations and should be denied.[5]

### 3. Clearly Established Law

Here, for the reasons above, Foreman is unable to satisfy the first qualified immunity step. Foreman's allegations do not give rise to a constitutional violation. Thus, the Court need not address the second step, whether Weaver violated a clearly established law. *Kinlin*, 749 F.3d at 577. Furthermore, Foreman has not highlighted a clearly established law specific enough to defeat Weaver's defense of qualified immunity, even if there had been a constitutional violation.

"An officer violates clearly established law and loses . . . immunity when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that

---

[5] Foreman also alleges that his Fifth Amendment substantive due process rights were violated by defendants "in that they failed to provide [him] with adequate medical care[.]" (ECF No. 1, PageID.17-18). However, Foreman's due process rights would only be implicated if his allegations had occurred pre-sentencing while he was a pretrial detainee. *See, e.g.*, *Prieto Refunjol v. Adducci*, 461 F. Supp. 3d 675, 698 (S.D. Ohio 2020). Based on the complaint, Foreman was sentenced in September 2006 and therefore was not a pretrial detainee during any relevant period. (ECF No. 1, PageID.7).

right." *Kent v. Oakland Cnty.*, 810 F.3d 384, 395 (6th Cir. 2016) (quotation marks and brackets omitted). "The law is clearly established when the plaintiff can point either to 'cases of controlling authority in his jurisdiction at the time of the incident,' or 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.' " *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Moreover, the Supreme Court recently emphasized the importance of specificity of clearly established law in the qualified immunity context. In *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12-13 (2021), the Supreme Court noted that it "ha[d] repeatedly told courts not to define clearly established law at too high a level of generality." It stressed that "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (internal quotation marks and citations omitted).

      The cases cited by Foreman in his attempt to avoid qualified immunity are either from other jurisdictions or speak too generally to apply to the specific allegations against Weaver. Though it is clearly established that a claim may be based on an officer's failure to act, *see Estelle v. Gamble*, 429 U.S. at 106; *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992), these cases do not show that the minor delay in care that Foreman received is a constitutional deprivation.

15

Therefore, because Weaver did not violate Foreman's constitutional rights, and because there was no violation of clearly established law, Weaver is entitled to qualified immunity from his claims.

## VI. Conclusion

Like so many prisoners, Foreman was an unfortunate victim of the COVID-19 virus while incarcerated. If his allegations are taken as true, his treatment at FCI Milan left much to be desired. However, for the reasons stated above, Weaver did not knowingly place Foreman at substantial risk of serious harm. Therefore, the undersigned RECOMMENDS that Weaver's motion to dismiss, (ECF No. 44), be GRANTED, and that Weaver be dismissed from the case.

Dated: November 2, 2023　　　　　　　　s/Kimberly G. Altman
Detroit, Michigan　　　　　　　　　　　　KIMBERLY G. ALTMAN
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

16

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 2, 2023.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager
