UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN P. FOREMAN,<br><br>     Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA et. al.,<br><br>     Defendants. | Case No. 22-10401<br>Honorable Laurie J. Michelson<br>Magistrate Judge Kimberly G. Altman |

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [108], GRANTING MOTIONS FOR SUMMARY JUDGMENT [81, 83], DENYING PLAINTIFF'S MOTIONS [95, 101, 105], AND SUA SPONTE DISMISSING DEFENDANT PATTON**

Benjamin Foreman says he contracted a serious case of COVID-19 while incarcerated at the Federal Correctional Institution in Milan, Michigan. So serious that he had a temperature over 100 degrees, was placed on a ventilator for 19 days, lost 52 pounds, and was pronounced dead twice. (ECF No. 1, PageID.9–10.) When Foreman eventually recovered, he was prescribed 30 days of rehabilitative therapy. (*Id.* at PageID.10.) However, he was removed from the hospital after only one therapy session and was returned to FCI Milan despite barely being able to walk. (*Id.*) He says he was placed in a COVID-19 isolation unit and was locked "in a dirty one-man cell . . . for 23 hours and 40 minutes a day." (*Id.*)

So Foreman filed this *pro se* suit, claiming that the United States, Warden Jonathan Hemingway, Nurse Practitioner Sarah Weaver, and a number of other FCI Milan employees violated his Fifth Amendment and Eighth Amendment rights by

failing to protect him from contracting COVID-19—i.e., by not providing face masks and failing to properly screen incoming inmates—and by acting deliberately indifferent to his medical needs after he contracted COVID-19. (*Id.* at PageID.14–18.)

Foreman also brings claims under the Federal Tort Claims Act for medical malpractice and negligence.[1] (*Id.* at PageID.18–24.) He says that Nurse Weaver committed malpractice by unnecessarily treating him for dehydration when he first fell ill, treating him with intravenous fluids instead of water bottles, leaving him while he was in clear distress, failing to inform a guard of his condition, and delaying his transfer to the hospital. (*Id.* at PageID.9; ECF No. 90, PageID.1997–1998.) Weaver disputes Foreman's version of events. (*See* ECF No. 81-5.)

All pretrial matters were referred to Magistrate Judge Kimberly G. Altman. (ECF No. 10.) In time, the government and Hemingway filed motions for summary judgment (ECF Nos. 81, 83) and Foreman moved to file an amended declaration (ECF No. 95) and an amended complaint (ECF Nos. 101, 105). On July 12, 2024, Judge Altman issued a thorough and comprehensive report and recommendation on these motions, recommending that the motions for summary judgment be granted, that Foreman's motion for leave to file an amended declaration be granted and his motion to amend the complaint be denied, and that the Court *sua sponte* dismiss Defendant

---

[1] The Court recognizes that the claims against Weaver have been dismissed, and she is no longer a defendant in this case. (*See* ECF Nos. 87, 93.) But Foreman's FTCA claims against the government still remain, and these claims involve Weaver's conduct. So the Court will discuss her conduct to the extent it is relevant to Foreman's claims against the government.

2

Patton. (ECF No. 108, PageID.2705.) Both Foreman and Hemingway filed objections to these recommendations. (ECF Nos. 110, 111.)

For the following reasons, the Court overrules all these objections and adopts the recommended disposition.

## I. Standard

When a party objects to a magistrate judge's report and recommendation, a district judge reviews the issues raised by the objections *de novo*; there is no obligation to review un-objected to issues. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). "The district court need not provide *de novo* review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (cleaned up). Objections should be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

## II. Analysis

### A. Foreman's Objections

Foreman makes eight objections to Judge Altman's recommendation. (*See* ECF No. 111.) The Court will address each in turn.

#### 1.

In Foreman's first objection, he says Judge Altman incorrectly outlined some facts. (*Id.* at PageID.2754.) Specifically, he says he was not housed in "open-bay

3

housing areas" but rather in a "two-man room[]"; he "never told Weaver that he was having problems tolerating food, suffered from nausea, [or] had generally not been taking in an adequate amount of food" and instead ate "every meal given to him that day"; and his vital signs were not taken by Weaver, she "merely took his word that he was suffering from [d]ehydration" before treating him for dehydration. (*Id.* at PageID.2754–2755.) He argues these are "material factual dispute[s] [that] create[] a genuine issue" such that summary judgment should be denied. (*Id.* at PageID.2775.)

"A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Westfield Ins. Co. v. Enter. 522, LLC*, 34 F. Supp. 3d 737, 743 (E.D. Mich. 2014) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984)). So the Court must determine whether these facts, if true, advance Foreman's claims.

Start with Foreman's constitutional claims. Foreman brings Fifth Amendment and Eighth Amendment claims alleging FCI Milan failed to protect him from contracting COVID-19 and acted deliberately indifferent to his medical needs after he contracted COVID-19. None of the facts Forman mentions are material to these claims. Foreman's harm stems from the allegedly inadequate treatment of his COVID-19 symptoms. If Foreman was housed in a two-man room instead of open-bay housing, this would make him *less* likely to contract COVID-19, not *more*—thus undercutting his claim that the prison failed to protect him from an infectious disease. And if Foreman was eating regularly, this would indicate he was *less* sick,

4

thus making any delay in treatment *more* reasonable. Thus, these facts that Foreman relies on do not preclude summary judgment on his constitutional claims.

The same is true for Foreman's FTCA claims. Foreman claims Nurse Weaver committed malpractice by unnecessarily treating him for dehydration when he first fell ill, treating him with intravenous fluids instead of water bottles, leaving him while he was in clear distress, failing to inform a guard of his condition, and delaying his transfer to the hospital. Related to these claims, Foreman objects that Judge Altman failed to consider his allegations that he was eating regularly, he did not tell Weaver he was suffering from nausea or difficulty eating, and Weaver never took his vital signs before treating him for dehydration. Judge Altman correctly explained why these facts do not preclude summary judgment. For one, the allegations are belied by Foreman's own complaint, where he alleges he was dehydrated, and his medical records, which indicate dehydration. (ECF No. 108, PageID.2731.) For two, Foreman has not demonstrated that any of his harm—his near-death experience and extended hospital stay—was caused by erroneous dehydration treatment. This is another reason why Judge Altman held that Foreman could not proceed without an expert. (*Id.* ("[Foreman's] claim is not based on unnecessarily being treated for dehydration, which would be parallel to *Sullivan*; it is that he was inadequately treated for COVID-19 symptoms. This is exactly the sort of claim that requires a medical expert in order to pursue." (citing *Sullivan v. Russell*, 338 N.W.2d 181 (Mich. 1983)).) Without expert testimony, the Court cannot determine whether any of

5

Foreman's harm was caused by an unnecessary IV treatment or his underlying COVID-19 symptoms.

Finally, as the government points out in its response to Foreman's objections, Judge Altman "granted Foreman's motion to file an amended declaration, but held that any factual disagreement created by the new declaration was immaterial to her findings and conclusions" and did not rely on "Weaver's declaration as to Foreman's condition . . . in making any of her findings and conclusions." (ECF No. 112, PageID.2794.) "Therefore," the government correctly states, "any disagreement on these issues does not constitute a material dispute of fact" since it would not have led to a different conclusion. (*Id.*)

So Foreman's first objection is overruled.

## 2.

Foreman's second objection challenges Judge Altman's finding that the government is entitled to sovereign immunity under the Federal Tort Claims Act's discretionary function exception. (ECF No. 111, PageID.2756.)

First, Foreman argues that his Eighth Amendment rights "protect him from the risk and from the contraction of an infectious disease" and that defendants violated those rights by "failing to conduct *mandatory* testing for infectious disease." (*Id.* at PageID.2756–2757 (emphasis added).) But as Judge Altman ruled, COVID-19 testing and protective measures were discretionary, not mandatory. To recap Judge Altman's ruling, sovereign immunity bars claims against the United States, except in cases where it has waived its immunity. (ECF No. 108, PageID.2718 (citing *United*

6

*States v. Orleans*, 425 U.S. 807, 814 (1976)).) The FTCA waives immunity for most tort claims, subject to some exceptions. (*Id.* (citing 28 U.S.C. § 1346(b)(1)).) One such exception is the discretionary function exception, which covers "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." (*Id.* (quoting 28 U.S.C. § 2680(a)).) Judge Altman found that no law "amount[ed] to a mandatory, non-discretionary rule for handling the COVID-19 pandemic," and instead found that the directives the parties cited "permit[ed] officials to make discretionary decisions in addressing infectious disease management." (*Id.* at PageID.2721–2722.) Thus, Judge Altman found the discretionary function exception applied in this case to shield the government from Foreman's claims.

Foreman attempts to relitigate this issue, saying he "is objecting on the ground that the Program Statement . . . requires mandatory official course of action for Infectious Disease as argued in his Reply Brief to deny Summary Judgment." (ECF No. 111, PageID.2758.) But he does not explain why Judge Altman's conclusion was wrong, nor does he distinguish the case law she cited indicating that decisions regarding how to handle COVID-19 in prisons were subject to the discretionary function exception. And the cases he cites do not persuade otherwise.

Second, Foreman argues that the discretionary function exception "does not shield conduct that violates the constitution." (*Id.* (citing *Nurse v. United States*, 226 F.3d 996, 1002 n.3 (9th Cir. 2000).) The discretionary function exception means that

7

"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). And the government is shielded from liability to the same extent that its officials are. "The FTCA does not *create* liability, it merely waives sovereign immunity to the extent that state-law would impose liability on 'a private individual in similar circumstances.'" *Myers v. United States*, 17 F.3d 890, 899 (6th Cir.1994) (quoting 28 U.S.C. § 2674).

Here, Foreman has failed to show that a government employee committed a constitutional violation at all. As Judge Altman explained, Foreman has not shown that Hemingway was "at all involved in the decision to have Foreman discharged from the hospital and returned to FCI Milan." (ECF No. 108, PageID.2741.) And as the Court has previously held, there is no evidence to suggest that Weaver committed a constitutional violation in her treatment of Foreman. (*See* ECF No 87, PageID.1814 ("Foreman's allegations [against Weaver] do not give rise to a constitutional violation."); ECF No. 93 (adopting report and recommendation).) Finally, as Judge Altman explained in her recommendation, there is no admissible evidence to suggest that other unnamed employees of FCI Milan committed constitutional violations. (ECF No. 108, PageID.2737 ("[T]here is no admissible evidence to show that an FCI Milan's guard failing to monitor Foreman or that any delay in Foreman being sent to the hospital caused Foreman any harm that would not have otherwise occurred."); *id.* at PageID.2716 ("[T]here [is] no record of an Officer Patton working at FCI Milan.").)

8

So Foreman's second objection is overruled.

### 3.

Third, Foreman objects to Judge Altman's decision regarding the "quarantine exception." (*Id.*) But it appears Foreman misunderstood Judge Altman's ruling.

Judge Altman did not find it necessary to rule on whether the quarantine exception applied because she had already found that the discretionary function exception applied. (ECF No. 108, PageID.2725–2728.) So her discussion of the quarantine exception was merely dicta—and any objection to this discussion would not alter her ruling.

Moreover, Foreman's objection that the quarantine exception should not apply here is actually in agreement with the conclusion that Judge Altman reached—namely, she explained that if she were to rule on the question, she would find the quarantine exception inapplicable in this case. (ECF No. 108, PageID.2728.)

Accordingly, Foreman's third objection is overruled.

### 4.

Foreman's fourth objection is that Judge Altman "erroneously interpret[ed]" *Fitzgerald v. Correctional Corp. of America*, 403 F.3d 1134 (10th Cir. 2005), and *Plescia v. United States*, No. 13-14347, 2015 WL 13743549 (E.D. Mich. June 17, 2015), *report and recommendation adopted*, 2016 WL 304536 (E.D. Mich. Jan. 26, 2016), and that he should not be required to produce expert testimony to succeed on his medical malpractice claims because defendants have not produced experts to support their summary judgment motion. (ECF No. 111, PageID.2759–2764.) Alternatively,

9

Foreman argues in his fifth objection that he should be allowed "to now disclose his . . . treating physician as an expert witness." (*Id.* at PageID.2766.)

Start with Foreman's first argument—that he does not need to retain an expert if the defense does not have one as well. This argument is contrary to Michigan law, which requires a plaintiff to provide expert testimony to make out a prima facie case; and Foreman does not distinguish the plethora of cases that Judge Altman cites for this proposition. (*See* ECF No. 108, PageID.2729–2730); *see also* Mich. Comp. Laws § 600.2912a; *Locke v. Pachtman*, 521 N.W.2d 786, 789 (Mich. 1994) (affirming lower court's decision to grant a directed verdict against the plaintiff before the defense put on any case because plaintiff's expert failed to establish the relevant standard of care to judge defendants' actions against or that defendants breached that standard, and therefore plaintiff had not made out a prima facie case); *Decker v. Rochowiak*, 791 N.W.2d 507, 518 (Mich. Ct. App. 2010) ("In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Expert testimony is required to establish the standard of care and to demonstrate the defendant's alleged failure to conform to that standard." (citations and internal quotation marks omitted)); *Koch v. Gorrilla*, 552 F.2d 1170, 1174 (6th Cir. 1977) (affirming district court's grant of a directed verdict against a plaintiff that failed to present expert testimony, even where the defendant did not present any evidence at all, because "Michigan law requires [the] plaintiff in a malpractice action to present expert testimony both as to the standards of medical

10

practice and as to the breach of those standards by the defendants. And although he argues that *Fitzgerald* is persuasive because Oklahoma law, like Michigan law, requires an expert to testify in medical malpractice cases (ECF No. 111, PageID.2763), he does not explain why Oklahoma law should supplant Michigan courts' interpretations of Michigan law, which applies to this case.

Further, Judge Altman did not err in her interpretation of *Plescia*. Indeed, "the most natural reading of *Plescia*" is that "even if the rule in *Fitzgerald* applied, the plaintiff would [still] have been required to produce expert testimony." (ECF No. 108, PageID.2730–2731.) This interpretation "squares the case with Michigan law and Sixth Circuit interpretations of that law," which require the plaintiffs in medical malpractice cases to provide expert testimony, irrespective of whether the defendant also presents expert testimony. (*Id.* at PageID.2731.)

That is not the end of the analysis. Foreman has a second objection regarding experts—that, if he is required to produce an expert witness, he should be allowed to use his treating physicians as experts. Foreman did not raise this argument before Judge Altman. "[A]bsent compelling reasons, [the Federal Magistrates Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Foreman gives no reason—let alone a compelling one—for his failure to raise this argument.

11

Moreover, the time for expert discovery has long passed. On June 23, 2023, Judge Altman granted Foreman's request to amend the scheduling order and gave the parties the following schedule:

>Plaintiff's Expert Disclosure: August 1, 2023
>Defendants Expert Disclosure: September 1, 2023
>Expert Discovery Cutoff: October 1, 2023
>Dispositive Motion Cutoff: November 1, 2023

(ECF No. 59, PageID.677.) The day that his expert disclosures were due, Foreman filed a motion to extend the scheduling order because he was having difficulty retaining an expert. (ECF No. 70.) Judge Altman denied the motion because Foreman had not been diligent in obtaining an expert, and "given the length of time Foreman has had to obtain expert witnesses, any further delay would unduly prejudice Defendants." (ECF No. 73, PageID.864.) More than a year has passed since Foreman's expert disclosures were due, and more than ten months have passed since the expert discovery cutoff. To now permit Foreman to disclose an expert would prejudice the defendants and go against Judge Altman's prior rulings.

So Foreman's fourth objection is overruled, and his request to disclose his treating physicians as expert witnesses is denied.

### 5.

Foreman next objects to Judge Altman's recommendation to dismiss his medical malpractice claim against Nurse Weaver. (ECF No. 111, PageID.2764–2765.) This objection contains several arguments.

First, Foreman argues that "Weaver mistakenly treated him for dehydration." (*Id.* at PageID.2766.) He claims that although he said in his complaint that he was

suffering from dehydration, "after further research" he now understands "that he never suffered from dehydration but from severe respiratory distress." (*Id.* at PageID.2764–2765.) But as discussed above, this does not create a genuine issue of material fact because Foreman's harm does not stem from the dehydration treatment.

Second, Foreman argues that his malpractice claim should not be dismissed for failing to retain an expert because he can simply name his treating physician as an expert. The Court has just explained why this will not be allowed.

Third, Foremanargues that he should be allowed to proceed without an expert because "the Sixth Circuit has previously held in several FTCA Civil Suits that a layman could determine whether malpractice occurred." (*Id.* at PageID.2767 (citing *Burns v. United States*, 542 F. App'x 461, 466–67 (6th Cir. 2013); *Bunche v. United States*, No. 17-6190, 2018 U.S. App. LEXIS 16748, at *11 (6th Cir. 2018)).) Here, he argues, "the fact that [Weaver] delayed Emergency Treatment for [Foreman] for almost two hours" was an obvious "breach of [her] duty to provide adequate medical care" such that no expert is needed to prove his claims. (*Id.* at PageID.2769.) This ignores Judge Altman's finding that an expert would be required to establish a standard of care and causation, even if Foreman could establish breach of duty without one. (ECF No. 108, PageID.2729.) And the Sixth Circuit cases that Foreman cites do not apply Michigan law. *See Burns*, 542 F. App'x at 463 (applying Tennessee law); *Bunche*, 2018 U.S. App. LEXIS 16748, at *3 (applying Kentucky law).

Finally, Foreman argues that Judge Altman "failed to give [his] Amended Declaration" the appropriate weight and did not "believe the facts and make all

13

justifiable inferences in Foreman's favor." (ECF No. 111, PageID.2767.) But he invokes the standard that applies to a motion to dismiss, not a motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). True, on summary judgment the Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004). But unlike at the motion to dismiss stage, inferences must come from evidence, not merely allegations. The Court does not simply "believe the facts" as articulated by one party.

As Judge Altman explained, Foreman's claims did not survive summary judgment because they were "not borne out by any admissible evidence." (ECF No. 108, PageID.2736.) She did consider Foreman's amended declaration, but still found that there was no genuine issue of material fact. (*Id.* at PageID.2744 ("The undersigned has considered these facts [in the amended declaration] above, but for the reasons stated, found them to be immaterial to the success of his claims. Thus, Foreman's motion to have the amended declaration considered should be granted. However, granting the motion does not change the recommendation that defendants are entitled to summary judgment as explained above.").)

So Foreman's fifth objection is overruled.

14

**6.**

Foreman's sixth objection is to Judge Altman's recommendation to dismiss the ordinary negligence claims against Hemingway and an unnamed prison guard. (ECF No. 111, PageID.2769–2770.) Judge Altman dismissed these claims because they were "not borne out by any admissible evidence." (ECF No. 108, PageID.2736.) Foreman argues a determination on causation and damages "may be rendered by the trier of fact as to ordinar[y] negligence." (ECF No. 111, PageID.2770.) While this is true, Foreman fails to understand that the reason Judge Altman dismissed these claims was not because Foreman lacked an expert; it was because Foreman has not put forth any evidence from which a jury could find that Hemingway or the unnamed guard caused Foreman's injuries.

Foreman does not specifically object to Judge Altman's recommendation to dismiss the ordinary negligence claims against Weaver, but he does argue that he should be allowed to "proceed without an expert witness as to his ordinary negligence claims." (*Id.*) This appears to reference Judge Altman's holding that the "ordinary negligence" claims against Weaver were actually medical malpractice claims because they involved "questions of medical judgment beyond the realm of common knowledge and experience." (ECF No. 108, PageID.2735 (quoting *Albright v. Christensen*, 24 F.4th 1039, 1043–44 (6th Cir. 2022)).) She dismissed those claims because they "would require expert testimony" and Foreman did not retain an expert.

If Foreman did indeed intend to object to this finding, he does not explain why Judge Altman's decision that these claims were medical malpractice claims was

15

erroneous. He simply reiterates his argument that these are ordinary negligence claims that a fact finder may decide without expert testimony. Thus, he does not raise an objection but rather attempts to relitigate issues already decided. *See Bradley v. United States*, No. 18-1444, 2018 WL 5084806, at *3 (6th Cir. Sept. 17, 2018) ("A party's objections are not sufficiently specific if they merely restate the claims made in the initial petition, 'disput[e] the correctness' of a report and recommendation without specifying the findings purportedly in error, or simply 'object[] to the report and recommendation and refer[] to several of the issues in the case.'" (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

So Foreman's sixth objection is overruled.

### 7.

Seventh, Foreman objects to Judge Altman's recommendation to deny a *Bivens* claim against Warden Hemingway because "at minimum Hemingway is liable for not ensuring compliance with the physician order upon discharge that [Foreman] receive specialized therapy and be confined in the prison Infirmary." (ECF No. 111, PageID.2771.)

This is a reference to Judge Altman's ruling that:

Foreman cannot show that Hemingway had any involvement in Foreman's medical care, including ordering him discharged from the hospital or specifically denying Foreman additional rehabilitative therapy. Even if the Court considers Foreman's claim that his doctor ordered an additional thirty days of care on May 1, 2020, which is not reflected in his medical records, all of the admissible evidence points to Hemingway having no role in cutting Foreman's care short.

16

(ECF No. 108, PageID.2742.) Foreman fails to explain why this conclusion was erroneous or point the Court to any admissible evidence contradicting Judge Altman's findings. The simple fact that Hemingway may have been in charge is not enough to prove a *Bivens* claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[Under *Bivens*] each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Indeed, the cases Foreman relies on involved wardens who, unlike Hemingway, had sufficient involvement in the defendant's medical treatment. So Foreman's seventh objection is overruled.

### 8.

Foreman's eighth and final objection is that he should have been allowed to amend his complaint. (ECF No. 111, PageID.2772.) He says that *pro se* plaintiffs are often allowed to amend their complaints and that "no such amendment [h]as ever been granted" in this case. (*Id.* at PageID.2772–2773.) But this overlooks the reasons why Judge Altman recommended denying his motions to amend his complaint.

As a starting point, Judge Altman found that the statute of limitations had run on the claims he sought to bring against those new defendants. (ECF No. 108, PageID.2745.) But Foreman says he should be allowed to add new defendants because "several federal employees against [*sic*] the United States are already aware of their involvement in this" suit. (ECF No. 111, PageID.2772.)

True, "an amendment adding new defendants may be allowed after the statute of limitations has run" (1) "if the new defendants had received timely actual or constructive notice," (2) "if notice could be imputed to them before the statutory time

17

period had run," or (3), "if timely notice could be implied by the relationship between the new defendants and the original defendant." *O'Brien v. City of Grand Rapids*, 783 F. Supp. 1034, 1038 (W.D. Mich. 1992) (citing *Berndt v. Tennessee*, 796 F.2d 879, 884 (6th Cir. 1986)). But Foreman's conclusory statement that "several federal employees"—not specifically the defendants he seeks to add—are "aware of their involvement" in the suit is not enough to convince the Court that the proposed new defendants had timely actual or constructive notice of this suit. Nor was this an argument that was raised before Judge Altman.

Foreman also does not address Judge Altman's conclusion that adding new claims against the existing defendants would be futile because these "additional" claims are "substantially similar" to the claims she recommended dismissing and would be subject to dismissal on the same grounds. (ECF No. 108, PageID.2745.)

So Foreman's eighth objection is overruled.

### B. Hemingway's Objections

Despite prevailing on his summary judgment motion, Hemingway also filed two objections to Judge Altman's report and recommendation. He objects to Judge Altman's "conclusion that this case is cognizable as" a *Bivens* action "in light of *Egbert v. Boule*, 142 S. Ct. 1793 (2022), and its progeny." (ECF No. 110, PageID.2750.) He argues (1) that this "case differs from previous *Bivens* cases in multiple meaningful ways" and (2) that Judge Altman should have "conduct[ed] an analysis of whether special factors counsel against extending a *Bivens* remedy." (*Id.* at PageID.2750–2751.)

18

The Court need not decide this issue. First, it is not a proper objection but rather an attempt to once again relitigate Judge Altman's finding—and this Court's previous finding—that Foreman's Eighth Amendment claim is cognizable under *Bivens*. (ECF No. 108, PageID.2738 ("Hemingway spends much of his brief asking the undersigned to reconsider the decision that Foreman's deliberate indifference claim is cognizable under *Bivens*. The undersigned declines to do so.").) Second, Judge Altman recommended granting summary judgment on Foreman's *Bivens* claims because Hemingway "has convincingly shown that there is no genuine issue of fact that he was at all involved in the decision to have Foreman discharged from the hospital and return to FCI Milan." (*Id.* at PageID.2740–2741.) And the Court has accepted this recommendation over Foreman's objections. Thus, the issue of whether the claims are cognizable under *Bivens* is moot—any such claims have already been dismissed.

So Hemingway's objections are overruled.

### C. Foreman's Motion to Strike

Lastly, Foreman moves to strike Hemingway's and the government's responses to his objections. (ECF No. 114.) He argues these responses are untimely because they were filed more than 14 days after Judge Altman's report and recommendation was issued. But Foreman misunderstands the standard. True, *objections* must be filed within 14 days. *See* Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d). But, as Judge Altman explained, "Not later than *14 days after service of an objection*, the opposing party may file a concise *response* proportionate to the objections in length

19

and complexity." (ECF No. 108, PageID.2747 (emphasis added)); *see also* Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d). These responses were filed only six days after Foreman's objections, so they are timely. (*See* ECF Nos. 112, 113.) Accordingly, Foreman's motion to strike is DENIED.

### III. Conclusion

In sum, Foreman and Hemmingway's objections are overruled, and Magistrate Judge Altman's report and recommendation is adopted in full. The government's motion for summary judgment (ECF No. 81), Hemingway's motion for summary judgment (ECF No. 83), and Foreman's motion for leave to file an amended declaration (ECF No. 95) are GRANTED. Foreman's motions to amend his complaint (ECF Nos. 101, 105) and his motion to strike (ECF No. 114) are DENIED. Defendant Patton is DISMISSED *sua sponte*. And the case is DISMISSED WITH PREJUDICE. A separate judgment will follow.

SO ORDERED.

Dated: September 20, 2024

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE